FREDERICK A. YOUNG

v.

HIRAM L. RICHARDSON.

1. LIBEL.—A communication addressed to the board of supervisors, protesting against the allowance of a claim of the State's attorney, which charged that he had made false report, under oath, to the superintendent of

schools, of the number of convictions procured by him, in this; that he had reported twelve convictions against one B, when in fact, he had only convicted B upon two charges on indictments containing six counts each, and had charged conviction fee for each count, when he was only entitled to such fee upon two charges, when viewed in connection with the latter statement is not defamatory if it implies that the report was false in that the State's attorney was not authorized by law to charge for conviction upon each count in the indictment, and the communication is open to such a construction. Words alleged to be libelous will receive an innocent construction if they are fairly capable of it.

2. JURY JUDGES OF LIBELOUS MATTER.—When the question whether a statement is libelous or not arises solely on the face of the publication, it is for the court to say whether or not it is a libel, but where it is uncertain whether the words convey a defamatory implication, the question is one for the jury.

3. PRIVILEGED COMMUNICATIONS.—The board had a right to investigate the action of the State's attorney in respect to the allowance of his claim, for it was not a claim the law compelled them to pay, and a tax-payer had a right to remonstrate against the payment, and show reasons why it should not be paid; and in order to make such communication libelous it must be shown to be both false and malicious.

4. VARIANCE.—The communication stated that large sums had been paid out for attorney's fees in certain cases, naming them, because of the incompetency of the State's attorney to perform such duties. The charge set out in the declaration implied general incompetency in those as well as other cases. In this there was a variance.

APPEAL from the Circuit Court of Kankakee county; the Hon. FRANKLIN BLADES, Judge, presiding. Opinion filed November 1, 1879.

This was an action on the case for an alleged libel claimed to have been published by appellant in a certain communication directed to the board of supervisors of Kankakee Co., Ill., and filed with the clerk of the board.

The avowed object of appellant in presenting the said communication to the board of supervisors was, that he and other citizens who signed it were tax payers of the county, and that appellee had presented an unjust claim to the board for allowance, and had presented it to the clerk of the board, and they desired to protest against its allowance. The claim, a copy of which is given in the communication, was a charge against the county by appellee, as State's attorney for 36 months office

rent, $250; fuel for same time, $150; to writing argument in Supreme Court, Col v. Terrell, $25; against Mix, $50; against P. H. Burchard et al., $50; against Wheeler et. al., $50—total, $577. In this communication, the appellant objected that the claim was illegal and devoid of all merit whatever. Appellant then set forth what he claimed to be the law in regard to State's attorney's duties, and his compensation or fees, and charges, irregularities and misconduct on the part of the State's attorney, and criticises the different reports he had made to the Circuit Court and to the superintendent of schools of his fees, charges and collections, with the apparent object of showing that he had charged illegal fees, and had been derelict in his duties, incompetent in some regards, and undeserving, to be allowed the claim presented, and closes with a prayer that a careful and fearless examination of the State's attorney's conduct be made, and that he be made to account for and pay over the people's money in his hands.

On various portions of this communication the action is based, charging that the words were said in reference to appellee in his office of State's attorney and counsellor at law.

In the first count, the words charged to be actionable are as follows :

"Mr. Richardson represents and swears in said report that there were twelve cases against Henry Blank, fine $10.00 in each case, and $5.00 conviction, and $1.00 commission in each case, making $120.00 in fines, $60.00 in conviction fees, and $12.00 commissions; taking the conviction fees and commissions out of the fines, leaving a balance of $48.00 in his hands. His report is utterly false, there being but two cases instead of twelve; said two cases numbered 29 and 30 in the County Court. Mr. Richardson (meaning the plaintiff) represents and swears in said report that there were twelve cases against Henry Blank, fine ten dollars in each case, and five dollars conviction, and one dollar commission in each case, making $120.00 in fines, $60.00 in conviction fees, and $12.00 commissions. Taking the conviction fees and commissions out of the fines, leaving a balance of forty-eight dollars in his hands. His (meaning the plaintiff's) report is utterly false, there

being but two cases instead of twelve; said two cases numbered 29 and 30 in the County Court. Meaning and intending to charge the plaintiff with willful, corrupt, and false swearing. Meaning thereby that the plaintiff in his said report had committed the crime of willful, corrupt, and false swearing."

The report was made Feb. 27, 1875.

In the second count of the declaration the words selected from the communication and charged to be libelous are as follows:

" In his report (meaning the plaintiff's report) he (meaning the plaintiff) represents a case of August Myer, and another of Albert Dehu, each fined $12.50, and charges for two conviction fees with commissions, amounting to $6.25 in each case, and takes them from the fines, but a reference to the first book of criminal records, page 106, in the County Court will show there was but one case against both, one conviction, hence he was entitled to but one conviction fee and no commissions whatever, and hence an overcharge of $7.50. Again, in said report he (meaning the plaintiff) charges $15.00 conviction fee in the case of Abel Webster, charged with felony. This charge (meaning the plaintiff's charge of fees) is utterly false, as Webster was acquitted on the ground of insanity and sent to the asylum and not to the penitentiary, hence there could be no conviction fee, false charge of $15.00."

" Meaning to charge the plaintiff with having, as State's attorney charged, illegal fees, with making false charges, with larceny of $15.00, of $7,50, of being guilty of embezzlement of $5.50, of being guilty of the crime of larceny, and of having made false reports and swearing to the same, etc."

The third count of the declaration selects the following words from said report as being libelous:

" He has in his report to the superintendent, falsified the docket of cases so as to illegally multiply conviction fees."
" He (meaning the plaintiff) has in his reports (meaning the plaintiff's reports) to the superintendent, falsified the docket of cases so as to illegally multiply conviction fees, meaning and intending thereby then and there to charge the plaintiff with the crime of forgery, meaning thereby to charge the plaintiff

with being guilty of changing the court dockets, meaning thereby to charge the plaintiff with being guilty of altering the docket of criminal cases in order to multiply conviction fees, meaning to charge the plaintiff with altering and falsifying the docket of cases in the County Court, meaning that the plaintiff was then and there guilty of the crime of forgery."

The fourth count in the declaration selects the following from the report as libelous:

" Again, Judge Starr was paid $525 to perform the duties of State's attorney in the case of The People v. The P. K. & P. R. R. Co. in the Circuit Court, because of the incompetency of the State's attorney to perform the duties of State's attorney."

" Meaning and intending thereby to charge the plaintiff with being incompetent to perform the duties of State's attorney for Kankakee county, in the case of The People v. The P. K. & P. R. R. Co. in the Circuit Court of Kankakee county, meaning and intending to charge the plaintiff with incompetency as an attorney and counselor at law."

Averring that by reason of said last charge clients have refused to employ the plaintiff, and that he had been brought into public disgrace, &c.

To this declaration there was the plea of the general issue and the 5th plea justifying the first count as to false report and false swearing only ; the 6th plea justifying a. portion of the alleged libel in the 2nd count, by showing that in the case against Webster plaintiff had been guilty of false charges where $15 had been charged as conviction fee. Webster had been tried for forgery and acquitted on the ground of insanity, convicted of insanity and sent to the insane asylum, and by the 7th plea the charge in the 3d count is justified by showing that the appellee had reported to the superintendent of schools that there was a conviction and fine against one L. P. Walker, and State's attorney had charged $5 conviction fee in it, when in fact there had been a fine in County Court but appealed to Circuit Court and afterwards the cause had been dismissed.

By the 9th plea the same matter is justified by averring that

appellee had made report to the superintendent of schools, Feb. 23, 1874, in which he had reported conviction fee of Stephen R. Moore and retained $5 for it, because Moore had never been convicted of any statutory offense.

The 4th amended plea justifies the charge in the first count by showing that appellee was not entitled to commissions until money was paid over.

The cause was tried by a jury, and verdict by jury for appellee for $175. Motion for new trial overruled, judgment on verdict and appeal to this court.

On the trial the communication to the board of supervisors from which the alleged libelous matter was taken, was read entire to the jury against objection of the appellant.

Upon reading it, the following averment pertaining to the same matter charged in the first count is found, and is a part of the communication, and should be added, as follows:

" And it will also appear that there were but *two* cases by his sworn report to the December term 1874, of the Circuit Court, hence there could be but *two* conviction fees of $5 each, thus showing $50 overcharge on conviction fees, and $12 false charge for commissions.   Total false charge, $62.00."

" His pretext for overcharge in conviction fees may have been that there were six counts in each indictment in said two cases; every indictment contains more than one count in any one case; his conviction fee covers the case, and he is entitled to but one conviction fee in one suit.   One suit brought upon six items of account does not entitle the attorney trying such case to fees for trying six law suits.   His charge of conviction fees is illegal and absurd, and the proper charge is two conviction fees which the law allowed him."

This should be added to the end of the alleged libelous matter charged in the first count.

The above also appears to be part of the matter that pertains to and is charged to be libelous in the 3d count of the declaration.   The matter charged in the 3d count seems to be a repetition in a general way of the matter set out in the first count.

The full text, as read from the same communication of the matter charged in the 4th count is as follows :

"Again Judge Starr was paid $525 to perform the duties of the State's attorney in the case of The People v. The P. K. & P. R. R. Co. in the Circuit Court, because of the incompetency of the State's attorney to perform such duties, which should be deducted from Richardson's legal compensation, instead of allowing his bill for extra compensation."

The following were given in evidence:

The State's attorney's report to the superintendant of schools, dated Feb. 23, 1874, as well as the one dated Feb. 27, 1875: The first showed a penalty against L. P. Walker for $25, and conviction fee charged in the same for $5.00; next, judgment against S. R. Moore, for $500, and conviction fee charged in that case of $5.00.

The latter report showed that the State's attorney's conviction fees was $6] each in 12 different convictions in cases in County Court against Henry Blank: also conviction fee in Circuit Court in case of Abel Webster, for $15.00, and the judgment of $25. against L. P. Walker was not fully paid. Also State's attorney's report to Circuit Court, September term, 1874, showing conviction in County Court, for selling liquor, in two cases, No's. 29 and 30, and fine of $60, in each case against Henry Blank. and charge of State's attorney for collecting the same, of $20.

It also appears that Walker was tried in the County Court and found guilty by the jury, June 9, 1873 and judgment for fine of $25, from which Walker took an appeal to the Circuit Court, Oct. 9, the judgment was reversed and the cause remanded to the County Court, and July 14, 1873, in the County Court, the cause was dismissed.

It appears that the judgment against Moore was had on the forfeiture of recognizance in a criminal case.

In rebuttal, Harrison Loring, an attorney at law in Kankakee county, was allowed to testify against the objections of the appellant, that the witness had advised appellee to take conviction fees in the cases of Abel Webster, L. P. Walker, and S. R. Moore, and on trial it appears that Webster was found insane on trial for crime of forgery.

Mr. F. A. Young, appellant, *pro se;* that it was error to admit in evidence a libelous article from a newspaper; the original manuscript should be produced or accounted for, cited Humphrey v. Phillips, 57 Ill. 132; Strader v. Snyder, 67 Ill. 404.

Enough of the defamatory words should be set out to show the sense and connection in which the words were used: Edgarly v. Swain, 32 N. H. 478.

The allegation in the fourth count, by charging general incompetency, prevented defendant from justifying and proving the truth of the communication as to incompetency in certain cases: 1 Starkie on Slander and Libel *377; Townshend on Slander 565.

Where special damage is the gist of the action, it must be found as alleged: Young v. McCrea, 3 B. & S. 264; Townshend on Slander, 541.

There must have been a publication of the libel to some third person: Townshend on Slander, 138.

An inuendo cannot enlarge or change the sense of the words published: VanVetchen v. Hopkins, 5 Johns, 220; Patterson v. Edwards, 2 Gilm, 720; 1 Starkie on Slander and Libel, *420; Townshend on Slander, 540; Yrisarry v. Clement, Bing. 432.

The jury are to determine the meaning of doubtful words: Townshend on Slander, 476.

A plea of justification, so far as honestly proven, should be considered in mitigation of damages: Thomas v. Dunaway, 30 Ill. 373.

Mr. Hiram L. Richardson, appellee, *pro se;* that after notice and failure to produce the original, a copy may be read in evidence, cited: Deshler v. Beers, 32 Ill. 368; Carr v. Miner, 42 Ill. 179; Ferguson v. Miles, 3 Gilm. 358; 67 Ill. 404; 41 Ill. 228; 39 Ill. 416.

Where the libelous meaning is apparent on the face of the communication, inuendos are unnecessary: Starkie on Slander and Libel, 599.

Where the act of the defendant is unsupported by any presumption in his favor, and is in itself hurtful and injurious,

the burden is upon him to show there was no malice: Starkie on Slander and Libel, 619; 49 Ill. 385; 81 Ill. 77.

LACEY, J.   The above cause presents some important questions which were raised on the trial in the court below, by the instructions given for appellee by the court, and also instructions refused for appellant.   The instructions will be noticed hereafter in the opinion, so far as is necessary.   In the first place, were the various matters set out in the 1st, 2d, and 3d counts of the declaration as the basis of the action libelous, saving the allegation in the 2d count of the false charge of appellee in the Webster case?   Secondly, considering the alleged libelous matters set out in those counts read in connection with its context, to be found in the whole article containing such matter, is it clear that they are at all libelous?

May they not reasonably be construed to be innocent and harmless, either to impute to appellee perjury, larceny, false swearing, the making false reports, or any of the misbehaviors charged in the declaration?   Thirdly, if it be doubtful as to the true meaning of the words charged, when considered in connection with all the words contained in the publication on the same subject, is it a question for the court or jury to decide what is really charged against appellee?

As to the first: whether the matter set out in the three counts has a defamatory meaning depends upon what construction is given to the whole communication including the words not set out in the declaration.

When this is determined, it is a question for the court, and not the jury, to decide, whether the publication is actionable or not.   The words set out in the first count, by themselves unaided by the words not set out, directly charge upon appellee that he had made a false report under oath in his report to the superintendent of schools, in stating that he as State's attorney had prosecuted twelve offenses against Henry Blank to conviction, and had charged a fee of five dollars for each, together with his commissions of ten per cent. on the amount of the fine, when in fact he had only convicted Henry Blank of two charges.   But upon examination of the remainder

of the communication relative to the matter pleaded in the count, it certainly tends to explain and modify it. It then becomes a question, and we think a debatable one, as to the meaning of the alleged libel. May it not mean when fairly considered, that the appellee made a false report under oath to the superintendent of schools, in this: that he had reported himself entitled to twelve conviction fees of five dollars each in two suits against Henry Blank, when he was in fact entitled to but two, one in each case; for the reason that while it was admitted that there were six counts in each of the two indictments, and the appellee as State's attorney convicted Blank on each one of the counts, yet by law the State's attorney as was claimed, was not entitled to charge for the conviction on each count, but only for each case, making an overcharge of $50? That his report under oath as regards the commission on the fine collected from Henry Blank was false in that, the State's attorney was not authorized by law to charge commissions until he had collected the money and paid it in to the superintendent of schools, the latter of which had not been done in that case. (Reference was made to R. S. 1874, p. 502, Sec. 8.) This appears in the communication. Such a publication as the latter construction implies would not be defamatory. The hearer or reader of it would know that appellee had been guilty of no wrongful or illegal act, and that appellee only showed himself mistaken in the law. The same may be said of the matters complained of in the second count of the declaration; in that the wrong consisted in charging for two conviction fees in a criminal suit against two joint defendants, where both were convicted, and it was charged appellee was ;entitled to no commissions, for the same reason above stated. The matter considered together is liable to this interpretation.

If this be the true meaning of the publication, appellee could not be harmed because he had a legal right to charge for the conviction of each defendant; hence he could lawfully and truthfully make the report, which he did. " In cases of slander, however positive may be the charge, if it is accompanied with words that qualify the meaning, and show to the bystanders

that the act imputed is not criminal, this is no slander, since the charge taken together does not convey to the minds of those who hear it an imputation of criminal conduct." Cooley on Torts, 199. Ayres v. Grider, 15 Ill. 37; Miller v. Johnson, 79 Ill. 58.

It is a principle of law that "words alleged to be libelous will receive an innocent construction if they are fairly susceptible of it." Cooley on Torts, page 208, and cases cited in note.

What is the true meaning, and who is to determine it, will now be considered : It is a general rule that in all civil suits the question of libel or no libel, when it arises solely on the face of the publication, is a question upon which the jury must follow the directions of the court. Hilliard on Torts, page 288, Sec. 52, Chap. VII. But this rule has its exceptions. Where it is uncertain when they convey a defamatory implication, the question is one for the jury." Cooley on Torts, page 208, and cases cited in note. Hilliard on Torts, pages 289, 291, secs. 53, 54 and 55, Chap. 7.

In this cause we think it is fairly a question for the jury, and the question of the meaning of the publication should have been left to the jury under a proper instruction by the court. The court should define in its instruction what the meaning sought to be attached to the communication by appellee is, and that if the publication was made in that sense then it would be libel, but the reverse if the more innocent construction be given. Then it would not be actionable, and the jury should be given the determination of that question. Hilliard on Torts, Sec. 55, Chap. 7, page 291, and cases cited.

The eleventh instruction given for appellee was faulty, in not announcing with certainty the proper rule.

Another important question arises in this case : the question of whether the remonstrance to the supervisors was a privileged communication. It was signed and presented to the board and is the foundation of this action. Upon this question it may be said there are communications that are absolutely privileged, upon which no action for defamation can be based, even though malice be charged, such as words spoken in

a judicial proceeding; testimony given by a witness in a court; and words spoken in a legislative body by its members in matters pertaining to the subject of legislation.    Then, again, there is a class of communications that are only conditionally privileged.    This rule applies to petitions, applications and remonstrances of all sorts addressed by the citizens to any officer or official body.    Many others might be enumerated.    Cooley on Torts, 214.    The cases only conditionally privileged are those in which the utterances or publication is on a lawful occasion, which fully protects it unless the occasion has been abused to gratify malice or ill will, and no action will lie unless it is shown to be both false and malicious.    Cooley on Torts, 214.    Whitney v. Allen, 62 Ill. 472.

"The proper meaning of privileged communications is only that the occasion on which the communication was made, rebuts the inference of malice *prima facie* arising from a statement predjudicial to the character of the plaintiff, and puts it on him to prove that there was malice in fact, *i. e.* that the defendant was actuated by motives of personal spite, or ill will, independent of the occasion on which the communication was made.    This may be established by the communication itself, by showing it was made in violent and abusive terms, and that the words used are stronger than the occasion justified.    The jury are entitled to read the writing in order to judge of its character."    Addison on Torts, 781.    Other evidence no doubt may be given to show the existence of actual malice.

The instructions given by the court to the jury on the part of appellee, and especially the twelfth, proceeded on a different theory, and to that extent were erroneous.    It is stated as a reason in the latter instruction, why the communication was not privileged, "that the board of supervisors was not a proper or legal tribunal to investigate the conduct of the State's attorney."    That in one sense may be true, yet the appellee had presented a large claim against the county for allowance by the board.    The board had a right to investigate the action of the State's attorney with reference to its allowance, for it was not a claim the law compelled them to pay, and the tax-payer had a right to remonstrate against its payment, and show

reasons why it should not be paid if done without actual malice.

Was the matter set out in the 4th count of the declaration variant from the proof?

It is charged in that count that the libel consisted in saying of the State's attorney that money had been paid out for "attorney's fee in the case of The People v. The P. K. & P. R. R. Co. in the Circuit Court, because of the incompetency of the State's attorney to perform the duties of States attorney." The communication was, "because of the incompetency of the State's attorney to perform *such duties.*" The charge set out in the declaration implies general incompetency as well in that case as all other duties of the office. The publication charges incompetency in suits like that one. We therefore think there was a variance.

The evidence of Loring was improper. There was no justification by any plea against any crime of perjury or offense involving the question of motive on part of appellee. The pleas of justification averred only false swearing and false report, and not perjury. The court erred in not excluding it. The judgment is reversed and cause remanded.

Reversed and remanded.

PILLSBURY, P. J., having, in the court below, passed upon some questions made upon the pleadings, took no part in the decision of the cause in this court.