VLADIMER CERVENY

*v.*

THE CHICAGO DAILY NEWS COMPANY.

*Filed at Ottawa October 31, 1891.*

1. LIBEL—*actionable words.* An action for libel may be sustained for words published which tend to bring the plaintiff into public hatred, contempt or ridicule, even though the same words spoken would not be actionable.

2. SAME—*publishing that plaintiff is an anarchist.* A declaration for a libel is good, on demurrer, which alleges, with sufficient legal precision, that the defendant falsely and maliciously published of the plaintiff language, which is literally transcribed, charging that the plaintiff is an anarchist. Such words have a direct tendency to bring the plaintiff into public hatred, contempt and ridicule.

3. PLEADING—*what demurrer admits.* A demurrer admits all such facts alleged in the pleading, to which it is applied, which are well pleaded.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on writ of error to the Circuit Court of Cook county; the Hon. RICHARD S. TUTHILL, Judge, presiding.

This is an action for libel. The declaration as amended contains one count, which is as follows:

"For that whereas, the said plaintiff, before and at the time of the committing by the defendant of the several grievances hereinafter mentioned, was a person of good name, credit and reputation in the county of Cook and State of Illinois, and before and at the time of the committing by the defendant of the several grievances hereinafter mentioned, carried on, and still does carry on, the trade and business of a clothing merchant in the city of Chicago, in said county of Cook, and was deservedly held in esteem by his neighbors and those with whom he had dealings in his trade and business as such cloth-

ing merchant, whereby he acquired great gains in his trade and business; and whereas, before and at the time of the committing by the defendant of the several grievances hereinafter mentioned, the plaintiff was held in high esteem by his neighbors and acquaintances, as a patriotic, law-abiding and law-respecting citizen of said county, and as to his political views, tenets and opinions he was, and for a long time prior thereto had been, a member and adherent of the republican party, and had obtained and received the nomination as a candidate for the office of county commissioner of said Cook county by the regular and general nominating convention of said republican party of the said county of Cook, held in Chicago, in said Cook county, on the 26th day of October, A. D. 1889, and thereby became and was a candidate for said office of county commissioner on the regular ticket of said republican party at the general election held in said county on the 5th day of November, A. D. 1889.

"And the said plaintiff, for a further statement of extrinsic facts bearing upon the grievances hereinafter mentioned and complained of, further avers, that on and prior to the 4th day of May, A. D. 1886, there was in said county of Cook, and elsewhere throughout the United States, and ever since that time has been and still is, a large number, class, sect or party of persons commonly called, known and designated as 'anarchists;' that on said 4th day of May, A. D. 1886, a great riot occurred in the city of Chicago, in said county of Cook, now commonly known as the 'Haymarket riot,' in which riot one Mathias T. Degan, a policeman of said city of Chicago, was, as was then and ever since that time has been and still is commonly understood and believed, killed by a dynamite bomb thrown by some person into the midst of a company of policemen of the said city of Chicago then and there being, and as a result of the explosion of said bomb, and the firing of pistol shots then immediately following, a large number, to-wit, six other of said policeman, were killed, and a large number, to-wit,

sixty of said policemen, were wounded; that it was then, and ever since that time has been and still is, commonly believed in said city of Chicago and in said county of Cook and elsewhere, that said riot and murder were immediately and remotely instigated, caused and brought about by said class and party of persons then and ever since then and now generally known and designated in said city and county as anarchists, and by certain leaders and prominent and representative men in said class or party of persons called anarchists, as aforesaid, and it was then, and ever since that time has been and is now, commonly understood and believed in the city and county aforesaid, that said riot and murder were the natural result of the doctrines and teachings of said class, party or sect called anarchists, as aforesaid, and that the doctrines, opinions, beliefs, teachings and tenets of said class, party or sect called anarchists, as aforesaid, and of the persons composing said class, party or sect, is, that the law and order of society then, and ever since then and now, existing, should be overthrown by revolution and force.

"And the plaintiff further avers, that after said riot and murder eight of the prominent leaders of said class, party or sect called anarchists, to-wit, August Spies, Michael Schwab, Samuel Fielden, Albert R. Parsons, Adolph Fischer, George Engle, Louis Lingg and Oscar W. Neebe, were indicted, by the grand jury of said Cook county, for murder, to-wit, the murder aforesaid, and thereupon such proceedings were afterward had in the Criminal Court of said Cook county that all of said eight persons above named were adjudged guilty of murder, and in pursuance of the judgment of said Criminal Court the said August Spies, Albert R. Parsons, Adolph Fischer and George Engel suffered the penalty of death by hanging, and in pursuance of said judgment the said Michael Schwab, Samuel Fielden and Oscar W. Neebe were committed to the penitentiary of the State of Illinois.

"And the plaintiff further avers, that said riot has been, ever since its occurrence, commonly known in said city and county as the riot of the anarchists; and said trial of said eight persons was at the time thereof, and ever since that time has been and still is, commonly known in said city and county as the trial of the anarchists; and the hanging of said four persons above named was then, and ever since that time has been and now is, in like manner commonly known and spoken of as the hanging of the anarchists.

"And the plaintiff further avers, that the name, term and designation of anarchist ever since said riot, trial and hanging, has been and still is commonly understood and regarded in said city and county, and elsewhere, as descriptive of one who holds and entertains opinions and doctrines opposed to the maintenance of law and order and subversive of government, and similar in that regard to the opinions and doctrines entertained and acted upon, as aforesaid, by said Spies, Schwab, Fielden, Parsons, Fischer, Engel, Lingg and Neebe.

"And the plaintiff further avers, that ever since said riot, trial and hanging, the name and designation of anarchist applied to any person has tended, and still tends, to expose such person to public hatred, contempt and financial injury, yet the defendant, well knowing the premises, but contriving and wrongfully and maliciously intending to injure and destroy the good name and reputation of the plaintiff as a law-abiding and order-loving citizen of the community in which he lives, to-wit, in the city and county aforesaid, and to injure him in his said business, and to bring him into public hatred, contempt, ridicule and financial injury, on the 4th day November, A. D. 1889, in the county aforesaid, wickedly and maliciously did compose and publish, and did cause to be composed and published, of and concerning the plaintiff, and of and concerning the plaintiff as a candidate for said office of county commissioner, in a certain newspaper called 'The Chicago Daily News,' whereof the said defendant was then and there the

proprietor, a certain false, scandalous, malicious and defamatory libel, containing, among other things, the false, scandalous, malicious, defamatory and libelous matters following, of and concerning the plaintiff,—that is to say: 'Cerveny (meaning the plaintiff) is an anarchist, hot-headed and fiery.' 'It was said yesterday that a committee of republicans had gone to see Cerveny (meaning the plaintiff), and was received by him (meaning the plaintiff) in a room with pictures of Louise Michel and of August Spies (meaning the said August Spies above mentioned) and the other executed anarchists,' (meaning the said Albert R. Parsons, Adolph Fischer and George Engel, who were hung for murder, as aforesaid.)   'This did not satisfy the republicans, and they were imprudent enough to complain about Cerveny,' (meaning the plaintiff,) meaning and intending thereby to charge the plaintiff with being a member of said class, party or sect of persons called anarchists, and that the plaintiff entertained and held to the aforesaid doctrines, views and tenets of said class, party or sect called anarchists, and that said plaintiff held to the teachings of said executed anarchists with regard to law and government, and that the plaintiff was in accord with the doctrines and cherished the memory of said executed revolutionists and murderers, Spies, Parsons, Fischer and Engel, and that the said plaintiff was a person who entertained opinions and doctrines opposed to the maintenance of law and order and subversive of government, and in favor of the overthrow of society as then existing, by revolution and force.

"And also for that whereas, afterwards, to-wit, on the 7th day of November, A. D. 1889, in the county aforesaid, the said defendant, well knowing the premises aforesaid, and further contriving and wrongfully and maliciously intending to injure and destroy the good name and reputation of the plaintiff as a law-abiding citizen in the community in which he resided, to-wit, in the city of Chicago and the county of Cook aforesaid, did compose and publish, and did cause to be composed and

published, of and concerning the plaintiff, and of and concerning the result of said election, and of and concerning the plaintiff as a candidate at said election, in said newspaper called 'The Chicago Daily News,' whereof the said defendant was there and then the proprietor, a certain other false, scandalous, malicious and defamatory libel, containing, among other things, the false, scandalous, malicious, defamatory and libelous matter following, of and concerning the plaintiff, as aforesaid, that is to say: 'But Cerveny (meaning the plaintiff) was voted against because he is an anarchist. This is disclosed by the returns from the U. O. D. wards. Here are three American League wards. Their vote indicates somewhat the temper of the party (meaning the republican party) towards Cerveny (meaning the plaintiff):

| Ward. | Cerveny (meaning the plaintiff). | Warner. |
|-------|----------------------------------|---------|
| 11th, | 1629 | 1870 |
| 12th, | 2028 | 2672 |
| 13th, | 1234 | 1481 |
| Totals, | 4891 | 6023 |

" 'These figures show that Warner ran nearly 1200 votes ahead of Cerveny (meaning the plaintiff) in these wards,' meaning and intending to charge that said plaintiff was then, to-wit, at the time of and before said election, a member and adherent of said party, sect or class of persons then commonly known and designated as anarchists, as aforesaid, and that he, the said plaintiff, was defeated at said election, and ran behind the other candidates on said ticket at said election, because he, the said plaintiff, was an anarchist, and meaning and intending to charge that the plaintiff was a person who entertained opinions and doctrines opposed to the maintenance of law and order and subversive of government, and in favor of the overthrow of society as then existing, by revolution and force.

"By means of the committing of said several grievances by the defendant, the plaintiff has been and is greatly injured in

his good name, credit and reputation, and has been brought into public scandal and disgrace, and also, by means of the premises, the plaintiff has been and is otherwise injured, to the damage of the plaintiff of twenty-five thousand dollars ($25,000), and therefore he brings suit," etc.

The defendant demurred to the declaration, and the court sustained the demurrer. The plaintiff appealed to the Appellate Court for the First District, and that court affirmed the judgment of the circuit court.

Messrs. JONES & LUSK, for the plaintiff in error:

If the words charged, taken in connection with the circumstances under which they were published, are susceptible of the libelous meaning ascribed to them, it is for the jury to determine whether such meaning is truly ascribed, and in such case a demurrer to the declaration should be overruled. *Gault* v. *Babbitt*, 1 Bradw. 130; *Hays* v. *Mather*, 15 id. 30.

The words of the innuendo are traversable, and have been admitted by the demurrer, and it is hard to conceive how the conclusion could be reached that the charge did not, under all the circumstances detailed, tend to impeach the honesty, integrity, virtue or reputation of the plaintiff, and thereby expose him to public hatred, contempt, ridicule or financial injury. In this connection we refer to the case of *Cramer* v. *Noonan*, 4 Wis. 831, as being precisely in point. We also cite *Brown* v. *Burnett*, 10 Bradw. 279; *King* v. *Root*, 4 Wend. 113; *Root* v. *King*, 7 Cow. 613; *Fry* v. *Carne*, 8 Mod. 283; *Rearick* v. *Wilcox*, 81 Ill. 77; *Huse* v. *Inter Ocean*, 12 Bradw. 627.

The charge is libelous on its face. *Stow* v. *Converse*, 6 Conn. 334.

The inducement setting forth the existence of the organization, the riot, murder and hanging, was unnecessary. An inducement is not necessary where the defamatory matter is, *prima facie*, in itself actionable. Newell on Defamation, p. 609, sec. 23; *Worth* v. *Butler*, 7 Blackf. 251.

The office of an innuendo is to aver the meaning of the language published; therefore, if the meaning of the language is plain, no innuendo is needed. The use of it can never change the import of the words, nor add to or enlarge their sense. Newell on Defamation, p. 619, secs. 34-36.

If the libel is plain, it is sufficient to set it out in the declaration, and the innuendo is useless.

In this petition the words are actionable of themselves, and there is no necessity for any colloquium or any innuendo to explain the meaning of such words. *Hudson* v. *Garner*, 22 Mo. 431.

If the matter is libelous without the innuendo, the innuendo may be rejected as superfluous. *Harvey* v. *French*, 1 Cr. & M. 11; *Gage* v. *Shelton*, 1 Rich. 242.

If the plaintiff's innuendo is not sustained, he "may fall back upon the words themselves," and urge that, taken in their natural and obvious signification, they are actionable in themselves without the alleged meaning, and that his unproved innuendo may be rejected as surplusage. Newell on Defamation, p. 628, secs. 38-41; *Watkin* v. *Hall*, L. R. (Q. B. C. L.) 401.

Mr. JOHN J. KNICKERBOCKER, for the defendant in error:

To charge a person with belonging to a sect or party is not slanderous. Whether the words charged are actionable, is for the court. *Schmisseur* v. *Kreilich*, 92 Ill. 347.

To charge a candidate for office with being uneducated, lazy and ignorant is not libelous, nor is it libelous, *per se*, to charge him with being a "social leper," who should be "deodorized." But it is otherwise to charge him with being a gambler or thief, etc. Townshend on Slander and Libel, (4th ed.) notes on p. 436; *Sweeney* v. *Baker*, 13 W. Va. 158.

In speaking of a person in trade, the fact of his being in trade sometimes stands in the place of special damage, but one being a candidate for office does not have the effect to

make language concerning him in character actionable *per se.* If the language concerning a candidate for office occasioned special damage, he may have his action. Townshend on Slander and Libel, (4th ed.) 231.

Per CURIAM: The demurrer admits all such facts alleged in the declaration as are well pleaded. (Gould's Pleading, chap. 9, sec. 4.) The declaration here alleges, with sufficient legal precision, that the defendant falsely and maliciously published of the plaintiff language, which is literally transcribed in the declaration, charging that the plaintiff is an "anarchist." An anarchist is defined by Webster to be: "An anarch; one who excites revolt or promotes disorder in a State," —and this we assume to be a sufficiently accurate definition of the word. It is, moreover, here alleged, that at the time and place of the publication complained of, it was commonly understood and believed that "the doctrines, opinions, beliefs, teachings and tenets of said class, party or sect called anarchists, as aforesaid, and of the persons composing said class, party or sect, is, that the law and order of society then, and ever since then and now, existing, should be overthrown by revolution and force." It can not, therefore, be correctly said that this is no more than charging the plaintiff with being a member of a certain political party, for anarchy being the enemy of all governments is necessarily the reverse of a political party, which is always in support of some form of government, and, professedly, of that which is the best.

It seems to have been assumed in the courts below that it is not libelous to publish, falsely and maliciously, that one entertains principles, merely, which, if carried into practice, would be violative of law and destructive of all government and of every right secured by it. It may, for the present, be conceded that an action would not lie for slander because of the speaking of words, orally only, which would amount to such a charge against an individual; but the rule in regard to libel

23—139 ILL.

is different. An action for libel may be sustained for words published which tend to bring the plaintiff into public hatred, contempt or ridicule, even though the same words spoken would not have been actionable. Folkard's Starkie on Slander and Libel, secs. 155, 156; Newell on Defamation and Slander, p. 78, *et seq.;* 1 Am. Lead. Cas. 131; 13 Am. and Eng. Ency. of Law, 298, and cases cited in notes. And it would seem so apparent that an individual may be brought into hatred, contempt or ridicule, within the meaning of the law, by professing vicious, degrading or absurd principles, and especially by professing them and also confederating with others alike professing them, to give them effect, that it can need no discussion. The following cases may, however, be referred to as illustrative of the correctness of this view of the law : *Hoar* v. *Silverlock,* 9 Q. B. 624; *Wakeley* v. *Healey,* 7 C. B. 591; *Williams* v. *Karnes,* 5 Humph. (Tenn.) 9; *Duncan* v. *Brown,* 15 B. Mon. 186 ; *Stow* v. *Converse,* 3 Conn. 325; *Giles* v. *State,* 6 Ga. 276.

Since government is the only guaranty we can have for protection in the enjoyment of life, and of all that makes life desirable, it is inevitable that all good citizens must regard those who advocate its destruction, either with feelings of hatred or contempt, in the same measure that they may regard them as powerful or impotent to carry out what they advocate. And admitting, therefore, as this demurrer does, that this publication was made falsely and maliciously, as set out in the declaration, we can not escape the conclusion that it is libelous.

The judgments of the Appellate and circuit courts are reversed, and the cause is remanded to the circuit court, with directions to that court to overrule the demurrer to the declaration, and allow the defendant to answer over, if it shall so desire, and thereupon to proceed *de novo.*

*Judgment reversed.*