### Isabella Harkness v. Chicago Daily News Co. et al.

1. LIBEL—*Words to be Taken in Their Obvious Meaning.*—The words of a libelous publication are to be taken in their natural and obvious meaning, the test being, what would men of ordinary understanding infer from such words.

2. PLEADING—*When It Is Error to Sustain a Demurrer to a Declaration in an Action for a Libel on the Plaintiff's Occupation.*—In an action for a libel on the plaintiff's occupation, if the words complained of are fairly susceptible of a defamatory meaning as respects such occupation, it is error to sustain a demurrer to the declaration if good in form, on the ground that the libelous words form no cause of action.

3. SAME—*Requisites of a Declaration for a Libel on the Plaintiff's Trade or Occupation.*—In an action for a libel on the plaintiff's trade or occupation a declaration which does not allege that such libel was published of and concerning the trade or occupation of the plaintiff is amenable to a demurrer as lacking an indispensable element of good pleading.

4. PRIVILEGED COMMUNICATIONS—*Whether a Publication Is or Is Not.*—Whether a publication is a privileged communication, whether it was honestly made by the defendants, believing it to be true, and whether it is a matter of public concern and as such not libelous, are matters of defense to be determined on the trial, and can not be reached by demurrer.

**Action on the Case,** for a libel.—Appeal from the Circuit Court of Cook County; the Hon. CHARLES A. BISHOP, Judge presiding. Heard in this court at the October term, 1901. Affirmed. Opinion filed May 22, 1902.

The plaintiff's third amended declaration, omitting the formal parts, is as follows:

First count: " For that whereas, the plaintiff, before and at the time of the committing by the defendants of the several grievances hereinafter mentioned, was a person of

good name, credit and reputation and deservedly enjoyed the esteem and good opinion and good will and custom and trade of her neighbors and other worthy citizens of this State, and at the time aforesaid exercised and carried on the business of a merchant, making and selling bakery goods to the general public, and was the owner of and conducted a bakery business at and upon the premises known as No. 1021 West 59th street in the city of Chicago in the county of Cook and State of Illinois, which said business was very profitable, so that the plaintiff thereby daily acquired and received great gains and profits, to wit, fifty dollars ($50) each day, yet the defendants, well knowing the premises, but wickedly and maliciously intending to injure the plaintiff and to bring her into public scandal and disgrace, and to injure and destroy and compel her to give up her said business and deprive her of the large profits and gains aforesaid, on or about the 28th day of October, 1899, in the city of Chicago in the county and State aforesaid, wickedly and maliciously did compose and publish, and caused to be composed and published, of and concerning the plaintiff, in a certain newspaper of general circulation and circulated among and read by the customers of the plaintiff in her business, called 'The Daily News' whereof the said defendant corporation then was the owner and proprietor, and the said Victor F. Lawson the editor, a certain false, scandalous, malicious and defamatory libel containing (among other things) the false, scandalous, malicious, defamatory and libelous matter following, of and concerning the plaintiff, that is to say :

' Dowieite Home (meaning the place of business of the plaintiff) is Disinfected.—Disinfector Carr, of the Health Department, to-day disinfected the bakery of Mrs. Isabella Harkness, (meaning the bakery of plaintiff), 1021 59th street, (meaning the place of business of the plaintiff at 1021 59th street), which was closed for a short time to allow the Health Department to fumigate the place thoroughly. A child of Mrs. Harkness (meaning a child of the plaintiff) died of scarlet fever, and Dr. Spalding, medical inspector, ordered the disinfection. The child that died (meaning the plaintiff's child) was not treated by a physician during his sickness, as his parents are followers of Dowie.'

' Fever Sold over Counter.'—(Meaning that over the counter of the plaintiff at her said place of business she sold her goods, wares and merchandise infected with scarlet

fever, a contagious and dangerous disease.) 'There are other cases in the neighborhood,' said Dr. Spalding 'and it looks as though fever was being sold over the counter of the bakery (meaning the plaintiff's bakery at her place of business, and that she sold over her said counter at her said place of business her goods, wares and merchandise infected with scarlet fever, a contagious and dangerous disease).

'To avoid this the place was thoroughly fumigated, so that the department feels safe in allowing it (meaning plaintiff's bakery) to stay open.'"

The same alleged libelous publication is again set forth, the word "West" being inserted before the words "59th street."

A second count of like effect follows.

The declaration concludes:

"By means of the committing of which said several grievances the plaintiff has been and is greatly injured in her good name, credit and reputation and brought into public scandal and disgrace, and has been and is shunned and avoided by divers reputable persons, and her said business has been thereby wholly broken up and destroyed, and the good will and custom and trade which she had theretofore enjoyed entirely lost to her, and she has been thereby deprived of all the gains and profits' which she would, but for the said acts of the defendants, have received; and she is otherwise thereby greatly injured. To the damage," etc., etc.

To this declaration the defendants interposed a general demurrer. The trial court sustained the demurrer, and entered judgment for costs against the plaintiff. From that judgment this appeal is prosecuted.

D. B. BRILLOW and FOLEY & FOLEY, attorneys for appellant; JAMES HIBBEN, of counsel.

AZEL F. HATCH, attorney for appellees.

MR. JUSTICE BALL delivered the opinion of the court.

The alleged libel reads as follows:

"Dowieite Home is Disinfected.—Disinfector Carr of the Health Department to-day disinfected the bakery of Mrs. Isabella Harkness, 1021 59th street, which was closed for a short time to allow the Health Department to fumigate the

place thoroughly. A child of Mrs. Harkness died of scarlet fever, and Dr. Spalding, medical inspector, ordered the disinfection. The child that died was not treated by a physician during his sickness, as his parents are followers of Dowie.

Fever Sold over Counter.—' There are other cases in the neighborhood,' said Dr. Spalding, ' and it looks as though fever was sold over the counter of the bakery.' To avoid this the place was thoroughly fumigated so that the department feels safe in allowing it to stay open."

In order to ascertain its meaning, the whole of the libel should be considered. Each phrase must be construed in the light of the entire publication. The words are to be taken in their natural and obvious meaning, and in the sense that fairly belongs to them. The test is, what would men of ordinary understanding infer from the words of the libel? Nelson v. Borchenius, 52 Ill. 236.

If the words of the libel are fairly susceptible of any defamatory meaning as respects the business of the plaintiff, then, to sustain a demurrer to a declaration, it being good in form, upon the ground that they form no cause of action, would be error. Hays v. Mather, 15 Ill. App. 30.

Whether the publication is privileged, whether it was honestly made by the defendants, believing it to be true, and whether it is a matter of public concern and as such not libelous, are matters of defense to be determined on the trial, and can not be reached by demurrer. Swan v. Tappan, 5 Cush. 104.

It has never been the criterion in determining the actionable quality of printed words, that they should import the commission of a crime, and the authorities are uniform that a writing may be libelous and actionable without proof of special damages, even though it contains no imputation of crime. 18 A. & E. Ency. 905 (2d Ed.).

The plain reading of the declaration shows that this alleged libel is of and concerning the business of the plaintiff, that is, of the healthfulness of the goods made and sold by her. It does not charge the commission of a criminal offense, nor that she is afflicted with some loathsome disease, but relates solely to her trade or occupation as a maker and

vender of food.   Hence she should charge in her declaration that the libel relates to her business.   Unless she so alleges, she will not be permitted, if she can, to show such fact upon trial.   The charge in the declaration is that this libel was " published of and concerning the plaintiff in a certain newspaper," etc.,   *   *   *   " containing (among other things) the false, scandalous, malicious and libelous matter following of and concerning the plaintiff, that is to say," etc.   It is nowhere alleged that the libel was published of and concerning her business, trade or occupation.   Here is lacking an indispensable element of good pleading, for want of which the demurrer must be sustained.   Barnes v. Trundy, 31 Mo. 321.

" In a matter of technical law, the rule is of more consequence than the reason of it, and however we may lament the lost labor and expense of the suit, we find ourselves wholly unable to prevent it."   Parker, C. J., in Bloss v. Tobey, 2 Pick. 320–330.

The judgment of the Circuit Court is therefore affirmed.