## Elizabeth B. Slaughter, Appellee, v. Eudora Johnson, Appellant.

## Gen. No. 17,448.

1. LIBEL AND SLANDER—*evidence of financial worth of defendant.* In an action for slander evidence of the financial condition of the defendant is admissible.

2. LIBEL AND SLANDER—*improper evidence and statements of counsel.* Where plaintiff in a slander case was charged with having maintained illicit relations with defendant's brother, it is improper to permit plaintiff to show, either by evidence or the opening statement of her counsel, the existence of a marriage engagement between plaintiff and such brother, the objection of defendant thereto, that prior to the death of such brother defendant was dependent upon him for support, and that defendant had inherited her property from such brother; since such showing would have a tendency to improperly influence the jury to award damages to plaintiff.

3. LIBEL AND SLANDER—*right of plaintiff to depart from innuendo laid.* Where the words ''whore'' and ''prostitute'' are alleged to have been spoken no innuendo is necessary, but if plaintiff elects to follow them by innuendoes averring that defendant meant and intended thereby to charge that plaintiff was a lewd, immoral and unchaste person and had been guilty of fornication, she cannot on the trial reject such meaning and claim that such words were meant and intended to charge her with being a common whore or public prostitute whose lewdness was promiscuous and mercenary.

4. LIBEL AND SLANDER—*admissibility of testimony of midwife.* In an

action by a woman charged with having been guilty of fornication, evidence of a midwife that plaintiff sought seclusion at her place on two or more occasions is competent.

5. LIBEL AND SLANDER—*admissibility of indictment of midwife for procuring abortion.* Where plaintiff in a slander suit was charged with having committed fornication, though there is evidence to show that she became pregnant and sought seclusion with a midwife on several occasions, an instrument purporting to be an indictment of such midwife for procuring an abortion is inadmissible.

6. LIBEL AND SLANDER—*presumption of continuance of illicit relations.* Where plaintiff in an action for slander is shown to have maintained illicit relations with a man for a number of years and it is shown that thereafter occasion, opportunity and an apparent disposition for a continuance of such relations existed, it will be presumed that such relations continued.

7. LIBEL AND SLANDER—*amount of damages.* Where a woman was charged with having been guilty of fornication, judgment for $8,000 is held to be excessive.

Appeal from the Circuit Court of Cook county; the HON. CHARLES M. WALKER, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1911. Reversed and remanded. Opinion filed June 30, 1913.

MCARDLE & MCARDLE, for appellant.

EDWARD H. MORRIS, for appellee.

MR. JUSTICE BAUME delivered the opinion of the court.

In an action in case for slander, brought by Elizabeth R. Slaughter against Eudora Johnson, the plaintiff recovered a verdict and judgment against defendant in the circuit court for $8,000, and this appeal followed.

The declaration contains three counts, the first of which was dismissed by plaintiff. The second count alleges that on, to-wit: September 7, 1907, at, to-wit: Atlantic City, New Jersey, * * * the defendant contriving, etc., in the presence and hearing of certain persons falsely and maliciously spoke and published of and concerning the plaintiff these other false,

scandalous, malicious and defamatory words follow-
ing, that is to say: "She" (meaning the plaintiff) "is
my brother's" (meaning the defendant's brother),
"kept woman;" "she" (meaning the plaintiff) "is a
dirty, low, vulgar woman;" "she" (meaning the
plaintiff) "is a woman without principle or charac-
ter;" "she" (meaning the plaintiff) "is nothing but
a dirty little whore;" "she" (meaning the plaintiff)
"is my brother's" (meaning defendant's brother)
"mistress;" meaning and intending thereby to charge
that the plaintiff was a lewd, immoral person and had
been and was guilty of fornication.  The third count
alleges that on, to-wit:  September 30, 1907, at, to-wit:
Cook county, the defendant further contriving, etc.,
in the presence and hearing of the same persons,
falsely and maliciously spoke and published of and
concerning the plaintiff: "Lizzie (meaning the plain-
tiff) "is nothing but a harlot;" "she" (meaning the
plaintiff) "is a kept woman;" "she" (meaning the
plaintiff) "is kept by my brother," "she" (meaning
the plaintiff) "is my brother's kept woman;" "he"
(meaning defendant's brother) "has been intimate
with her" (meaning the plaintiff) "for five years;"
"she" (meaning the plaintiff) "has been sleeping with
my brother;" "she" (meaning the plaintiff) "is not
and never will be married to my brother" (meaning
the defendant's brother); "but she" (meaning the
plaintiff) "has been intimate with him" (meaning the
defendant's brother); "she" (meaning the plaintiff)
"is a prostitute;" "she" (meaning the plaintiff) "is
a low woman;" "she" (meaning the plaintiff) is kept
by my brother;" "she" (meaning the plaintiff) "is
a dissipated woman, and has been kept by my
brother;" "my brother" (meaning the defendant's
brother) "keeps her" (meaning the plaintiff); "she"
(meaning the plaintiff) "has acted the 'whore;'"
"she" (meaning the plaintiff) "is my brother's mis-
tress;" "she" (meaning the plaintiff) "is a loose, low

woman;'' ''she (meaning the plaintiff) ''is a dissi-
pated, low, vulgar woman;'' ''my brother has been
keeping her'' (meaning plaintiff) ''for years;'' ''she''
(meaning the plaintiff) ''is the cause of our family
being 'unhappy;' '' ''she'' (meaning the plaintiff) ''is
my brother's kept woman;'' meaning and intending
thereby to charge that the plaintiff was an unchaste
woman and had been and was guilty of fornication,
etc.

Defendant pleaded the general issue and a special
plea of justification, which alleges that from 1902 to
September, 1907, plaintiff was kept, maintained and
supported by one John V. Johnson, and during said
period at Chicago and elsewhere said Johnson and
plaintiff committed fornication and were intimate with
each other.

At the close of the evidence for plaintiff, after it
became manifest that illicit relations had existed be-
tween the plaintiff and John V. Johnson, counsel for
plaintiff announced that he would rely solely upon the
slanderous words alleged to have been spoken by
defendant, to-wit: ''She'' (meaning the plaintiff) ''is
nothing but a dirty, little whore; and she (meaning
the plaintiff) is a prostitute.''

All of the persons concerned belong to the Ethi-
opian race.

The evidence introduced at the trial tends to show
that in 1901, the plaintiff, who was then about twenty-
one years of age and resided in Lexington, Ky., formed
the acquaintance of John V. Johnson, a brother of the
defendant, who resided in Chicago, where he conducted
a saloon and gambling house, in which business he
accumulated a fortune; that in 1902, the plaintiff
removed to Louisville, Ky., and in 1903 she removed to
Chicago, where she continued to reside up to the time
of the trial; that beginning in 1902 or 1903, the rela-
tions between plaintiff and Johnson became illicit and
so continued until at or shortly prior to Johnson's

death in September, 1907; that upon at least two occasions in 1903 and 1904 the plaintiff's relations with Johnson resulted in her becoming pregnant and her seeking seclusion in an establishment conducted by a midwife; that in July, 1907, while Johnson was a guest at a hotel in Atlantic City, N. J., he was taken ill and was visited there by the plaintiff; that in August, 1907, when the defendant and her mother went to Atlantic City to attend Johnson during his illness, they found the plaintiff occupying a room at the same hotel; that shortly after defendant and her mother arrived in Atlantic City the latter was taken ill; that when Johnson had apparently partially recovered from his illness he left Atlantic City for the purpose of arranging for the return of defendant and his mother to Chicago, but was again taken suddenly ill in New York City, where he died; that the alleged slanderous statements of and concerning the plaintiff were made by defendant to one Julia Whitted, a chambermaid in the hotel in Atlantic City when defendant and her mother arrived there and saw the plaintiff in attendance upon Johnson, and again immediately after the defendant had been notified of the death of Johnson; that the first conversation between defendant and Julia Whitted was heard by the plaintiff.

Over the objection of defendant the plaintiff was permitted to show that a marriage engagement was entered into between Johnson and herself in 1902, and that a time for the performance of the marriage ceremony had been fixed in each of the years 1903, 1905 and 1907. Plaintiff was properly permitted to show the financial worth of the defendant, but she was further permitted to show, over the objection of the defendant, that the defendant had inherited her property from Johnson, her brother.

In his opening statement to the jury counsel for plaintiff was permitted to state that a marriage engagement existed between the plaintiff and Johnson;

that the defendant and her mother objected to and sought to prevent their marriage; that during his lifetime Johnson, out of his abundant means, supported the defendant and her mother and provided them with all the necessities and luxuries of life; that up to the time Johnson became acquainted with and courted the plaintiff all of his property stood in the name of the defendant, and that thereafter when defendant and her mother objected to his marriage with the plaintiff, Johnson insisted that the defendant should turn over to him all the property belonging to him.

These facts, if true, were not responsive to any issue in the case and were manifestly impressed upon the jury for the purpose of improperly influencing them to award to the plaintiff a substantial portion of Johnson's estate in reparation of the alleged wrong inflicted upon her by the defendant in opposing her marriage to Johnson.

The words "whore" and "prostitute," applied to a single woman, are equivalent to charging her with having been guilty of fornication, and are actionable *per se* without colloquium or innuendo, and the innuendo may be rejected as surplusage. *Schmisseur v. Kreilich,* 92 Ill. 347.

True, where words actionable *per se* are alleged to have been spoken no innuendo is necessary, but where the plaintiff elects by innuendo to ascribe a certain meaning to the words complained of such meaning becomes a part of the issue, and he cannot on the trial reject such meaning and resort to another. *Strader v. Snyder,* 67 Ill. 404; *Stowell v. Beagle,* 57 Ill. 97.

In the case at bar, the innuendo in the second count of the declaration is, "meaning and intending thereby to charge that the plaintiff was a lewd, immoral person and had been and was guilty of fornication;" and the innuendo in the third count of the declaration is, "meaning and intending thereby to charge that the

plaintiff was an unchaste woman and had been and was guilty of fornication.''

Proof that the plaintiff had sustained illicit sexual relations with Johnson prior to the speaking by the defendant of the words charged and relied upon as being slanderous would constitute a justification within the issue made by the innuendoes, and plaintiff was and is not at liberty to enlarge the issue by claiming that the said words were meant and intended to charge her with being a common whore or public prostitute,—one whose lewdness was promiscuous and mercenary. The case was, however, tried by both parties upon the theory that whether or not the words spoken charged the plaintiff simply with being or having been guilty of fornication with Johnson, or charged her with committing or having committed fornication promiscuously, were questions of fact for the jury.

Evidence offered by defendant to show that Mrs. Strue conducted the business of a midwife at the several places where the plaintiff remained for a time on two or more occasions was competent and was properly admitted by the court. Defendant was not unduly restricted in making such proof.

What purported to be an indictment by the grand jury charging Mrs. Gillis, formerly Mrs. Strue, with abortion was offered in evidence by defendant and properly excluded. The indictment was manifestly incompetent as evidence and the offer of it as such was improper.

There is no pretense that there was any change in the relations existing between plaintiff and Johnson from 1902 up to September, 1907, when the slanderous words are alleged to have been spoken, except such as was necessarily induced by the serious illness of Johnson in August and September, 1907, and defendant having shown that illicit relations existed between plaintiff and Johnson from 1902 to 1905, and that, thereafter, occasion, opportunity and an apparent disposition for

a continuance of such relations existed, defendant was entitled to the presumption that such relations continued. The slanderous words charged and relied upon by plaintiff involved the substantial imputation that she had theretofore committed fornication, and not merely that she was committing fornication in 1907, or in September of that year, or when the words were spoken. *Stowell v. Beagle*, 57 Ill. 97.

The 1st, 2nd, 3rd and 4th instructions, given at the instance of plaintiff, are subject to the criticisms that they practically restrict defendant's proof in support of her plea of justification to the times above stated. If the record was otherwise free from error, the amount awarded by the jury as damages is so grossly excessive, as to necessitate a reversal of the judgment.

The judgment is reversed and the cause remanded.
*Reversed and remanded.*