LaGrange Press, Appellant, v. Citizen Publishing Company and William W. Loomis, Appellees.

Gen. No. 33,312.

Opinion filed April 22, 1929.

Weightstill Woods, for appellant.

Winters, Stevens, Risk & Griffith, for appellees; George M. Stevens and Melvin L. Griffith, of counsel.

Mr. Justice McSurely delivered the opinion of the court.

In an action on the case for libel, plaintiff's declaration in four counts was met by general and special demurrers, which were sustained by the trial court, and plaintiff electing to stand by its declaration the suit was dismissed.

The libel alleged is found in an article appearing in a weekly newspaper published in the Village of La-Grange, Illinois, called the "LaGrange Citizen," of which the defendant Citizen Publishing Company was the owner and the defendant William W. Loomis was the editor. It is as follows:

"Vote to Stand by Their By-Laws
Chamber of Commerce Refuses to Establish
Precedent by Changing Its Rules.

"By a two to one vote the LaGrange Chamber of Commerce declined to waive its by-laws relative to advertising in a newspaper that has not qualified ac-

cording to the association rules. A rule adopted many years ago provided that members could not advertise in a paper until it had been admitted to the mails as second class matter for three months.

"The LaGrange News has had its application for entry to the mails turned down by the post office department, and the publishers asked the Chamber of Commerce to grant a 'special dispensation' so members might advertise without being fined. They had previously intimated to the board of directors that they might take the matter into court as their attorney had advised them the association's rule was in restraint of trade.

"The directors asked the association attorney, Walter Hamilton, for an opinion which was read Monday night. He went into the case thoroughly and advised that the association was within its legal rights in adopting such a rule.

"The question of policy was then debated at length and the members appreciated the position of the News, but felt that it would be establishing a precedent it would be hard to stop if they began making exceptions in the enforcement of the rule. The vote was two to one for living up to the rules."

The particular words complained of are presented in the declaration as follows: "The LaGrange News (meaning the newspaper owned and published by the plaintiff) has had its . . . application for entry to the mails turned down by the post office department (meaning the plaintiff's publication, LaGrange News, had been excluded by the post office department as nonmailable matter.)"

Plaintiff's declaration set forth the federal postal law describing nonmailable matter. Briefly stated, this statute bars from the mail all obscene publications.

Plaintiff alleged that, when defendants published that plaintiff "has had its application for entry to the mails turned down by the post office department," it was meant that plaintiff's publication "had been excluded by the post office department as non-mailable matter," and alleged in various forms that this was maliciously published with intent to injure the plaintiff by bringing its good name into public scandal and disgrace and to destroy its reputation and credit.

In determining whether or not the published article is libelous *per se,* we must view it stripped of all innuendo, colloquium or extrinsic or explanatory circumstances, and if the words are unambiguous and incapable of an innocent meaning they may be declared libelous as a matter of law. *Dowie v. Priddle,* 216 Ill. 553, 558; *Slaughter v. Johnson,* 181 Ill. App. 693; *Schmisseur v. Kreilich,* 92 Ill. 347; *Burr v. Winnett Times Pub. Co.,* 80 Mont. 70; *Kee v. Armstrong, Byrd & Co.* (Okla.), 151 Pac. 572; *Brick Bowman Remedy Co. v. Jensen Salsbery Laboratories, Inc.,* 17 F. (2d) 255. In determining this, the words must be taken in the sense which readers of common and reasonable understanding would ascribe to them, that is, in their ordinary and common acceptation. "All the words in the article are to be considered, and when they are all considered together, the question is, how would they be understood by men of common and reasonable understanding?" *People v. Fuller,* 238 Ill. 116; *Nelson v. Borchenius,* 52 Ill. 236; *Barnes v. Hamon,* 71 Ill. 609; *Ransom v. McCurley,* 140 Ill. 626. The meaning of the words alleged to be libelous cannot be, by innuendo, extended beyond a reasonable construction. *Sullivan v. Illinois Pub. & Prtg. Co.,* 186 Ill. App. 268. Innuendoes are not available to impute libel to an article which in itself is otherwise innocent of any libelous meaning. *Fulrath v. Wolfe,* 250 Ill. App. 130. Words alleged to be libelous will receive an innocent construc-

tion if they are reasonably susceptible of it. *Young v. Richardson,* 4 Ill. App., 364; *Fulrath v. Wolfe,* 250 Ill. App. 130; *Harkness v. Chicago Daily News Co.,* 102 Ill. App. 162.

Plaintiff argues upon the assumption that the defendants had published "that plaintiff had been denied the use of the United States mail in its newspaper business" and that the average reader would understand this to mean that plaintiff's business "was conducted by fraud or obscenity in contravention of the federal statute," which bars such publications as nonmailable.

This is a distorted meaning of defendants' article. It makes no such charge. It says that plaintiff's "application for entry to the mails" has been refused. Chapter 6, sec. 226 of the U. S. Code, entitled the Postal Service, gives the conditions upon which a publication shall be admitted to the United States mails. These relate to regularity of issue, the office of publication, the format and the purpose of the publication. These conditions are entirely unrelated to any moral qualities of the publication, so that the refusal of the post office department to admit plaintiff's newspaper would manifestly have no connection whatever with the statute barring obscene publications.

In the cases cited by plaintiff where the article or language complained of has been held to be libelous, the judgment was based upon the conclusion that the article was susceptible of no other fair construction than that it contained an imputation upon the plaintiff's character or reputation. That is not true of the article before us. It is entirely consistent with plaintiff's freedom from any moral taint or wrongdoing. To hold it libelous would be to enlarge the meaning of the words used beyond their natural and ordinary meaning and to give them a meaning far beyond that

which they reasonably convey. They are fairly susceptible of but one meaning and that a purely innocent one.

The demurrers were properly sustained, and the judgment order is affirmed.

*Affirmed.*

O'Connor, P. J., and Matchett, J., concur.