**SPANEL et al. v. PEGLER et al.**
No. 9128.

Circuit Court of Appeals, Seventh Circuit.
Feb. 11, 1947.

Rehearing Denied March 6, 1947.

LINDLEY, District Judge, dissenting in part.

620

Max Swiren, Ben W. Heineman, and Joseph D. Block, all of Chicago, Ill. (Swiren Heineman & Antonow, of Chicago, Ill., of counsel), for appellants.

Floyd E. Thompson, of Chicago, Ill., for appellees.

Before EVANS and KERNER, Circuit Judges, and LINDLEY, District Judge.

KERNER, Circuit Judge.

Plaintiffs brought this action for libel against defendants who were responsible for the inception and publication of the alleged libelous article which appeared in a Chicago evening newspaper. Diversity of citizenship and the requisite amount in controversy resolved the question of jurisdiction. Defendant Pegler was not served, and the remaining two defendants, who were served and appeared, joined in a motion to dismiss the amended complaint on the grounds of failure to state a cause of action. The court sustained their motion, and plaintiffs have appealed.

The amended complaint alleged that plaintiff Spanel was the president of International Latex Corporation; that he was not, nor is he now, a Communist, either in sympathy or political belief; that about March 15, 1945, the defendants—the Illinois Publishing and Printing Co., publisher of the newspaper "The Chicago Herald-American," and King Features Syndicate, the distributor of Pegler's column—published in "The Chicago Herald-American" the alleged defamatory article. The complaint further alleged that "By virtue of the writing and publication of such false, scandalous, malicious and defamatory libel, the defendants and each of them did mean and * * * were understood as meaning that the plaintiff Spanel was and is a Communist or a so-called 'fellow-traveler' or adherent to, or sympathizer with, the principles, preachments and objectives of Communists or Communism." The same article was published in approximately 180 newspapers throughout the United States by means of the service provided by King Features, for which additional damages were sought.

The article in question, which was made part of the complaint, omitting portions, is hereby set out:

"As Pegler Sees It.
Communists Go .'Big Business'
to Trick U. S.
By Westbrook Pegler.

"In Writing some time ago of the use of radio by a Russian-born war contractor to harangue the Americans with propaganda consistent with the Communist line, I made the mistake of declaring that our standard American press would not sell advertising space for editorial matter.

"It was a careless observation and incorrect because, periodically, since 1939, the International Latex Company of Playtex Park, Dover, Del., has been running political arguments as paid advertisements.

"These have been New Deal preachments, and anti-Nazi, but, as far as my reading of them reveals, never anti-Communist, nor hostile to totalitarianism, as such.

* * * * * *

"Even though it were not deducted, but paid out of the company's [Novick's Electronic Corp.] own profits, they would still pay for it because, after all, it is the taxpayers who pay the profits, too. A Communist organization having the form of an American business corporation might desire profits only to be able to use them to promote the cause of communism.

"There are points of similarity between Novick of Electronic and the president of International Latex, whose name is Abraham N. Spanel. * * * His [Spanel] advertisements run two or three columns wide, the length of the page, in a national list of newspapers, a campaign suggesting a huge appropriation for political propaganda, and he is a rapturous advocate of

Henry Wallace as an American political prophet.

\* \* \* \* \* \*

"Another of Mr. Spanel's rhapsodies was a reprint of a column by a member of the Roosevelt newspaper following in Washington, which described Wallace as a champion and symbol of the 'aspirations of the common man and the underdog.' This was a poetic construction well expressing the attitude of some demagogues of the extreme left who regard the American citizen as a soulless lump to be fed, quartered, ordered and disciplined even as a dog.

"A native of Russia and an admirer of the Soviet system might be pardoned in the error.

\* \* \* \* \* \*

"He [Spanel] is said to have returned voluntarily $1,500,000 of his profits to the Treasury, but we are not told whether he might have had to do this anyway, as many manufacturers must, under the renegotiation process. A war contractor thus could make patriotic virtue of legal necessity.

"We do know, however, that the advertising matter is entirely political and ideological, with no mention of any commercial product, and that it represents a lavish outlay of money by a corporation for political propaganda in the guise of public service, financed by an immigrant from Russia, who seems to admire Russia as a trustworthy national comrade of the United States, without reference to the record of Russia's past performances or examination of the Communist system."

The complaint further alleged that for a long time prior, to March 15, 1945, there existed throughout the United States persons called Communists and that it was commonly believed that Communists and their sympathizers, adherents and so-called "fellow-travelers" were persons who were not attached to and did not give primary allegiance to the Constitution or the Government of the United States, but were persons who sought unlawfully and by force and violence or trickery to overthrow the Government of the United States

The question is whether the complaint states a cause of action. Defendants' position is predicated upon two major premises: first, that it is not libelous per se to write of any one that he is a Communist or that he is sympathetic toward Communism; secondly, there are no facts alleged in the complaint which show that the statements made in the alleged libelous article are unreasonable editorial comment or are false.

█ In Illinois, whose law is controlling in this case, written or printed words are libelous per se " 'if they tend to expose plaintiff to public hatred, contempt, ridicule, aversion or disgrace, and to induce an evil opinion of him in the minds of right thinking persons. \* \* \*' " White v. Bourquin, 204 Ill.App. 83, 94, and cases cited. While this is a standard definition of libel per se, two questions present themselves for our consideration and a negative answer to either one precludes plaintiffs' case.

(1) Is it libelous per se to write of a person that he is a Communist or a Communist sympathizer?

(2) If it is, has a question been presented to be determined by the jury in that the alleged offending article[1] is reasonably susceptible of being understood by ordinary readers as conveying this meaning?

Through their courts, sister states have held that it is libelous per se to characterize a person as a Communist or a Communist sympathizer.[2] Levy v. Gelber, 175 Misc. 746, 25 N.Y.S.2d 148; Toomey v. Jones, 124 Okl. 167, 254 P. 736, 51 A.L.R. 1066; Gallagher v. Chavalas, 48 Cal.App. 2d 52, 119 P.2d 408. Illinois courts have never been called upon to pass directly on this question, but in Cerveny v. Chicago Daily News Co., 139 Ill. 345, 28 N.E. 692,

---

[1] For our purposes it is sufficient to speak of one article, for while the complaint alleges the publication of the same article in various newspapers, as evidenced by exhibit B, it differs from the article published in the "Chicago Herald-American" only in format and headline which was composed for the Chicago newspaper by defendant Ill. Publishing and Printing Co.

[2] In Grant v. Reader's Digest Ass'n., 2 Cir., 151 F.2d 733, 735, the court in interpreting the law of New York regarding the subject of libel held that the difference between a Communist and a Communist sympathizer was one of degree only.

622

13 L.R.A. 864, and in Ogren v. Rockford Star Printing Co., 288 Ill. 405, 123 N.E. 587, the court passed upon charges quite similar to those published in this case.

In the Cerveny case, the characterization of plaintiff as an anarchist in a publication of defendant's newspaper was held to be actionable and libelous per se. In the Ogren case, the defendant newspaper asserted that plaintiff was a socialist and a rebel against the prevailing economic system. The court held this to be libelous per se. Recently, this court had occasion to interpret the law of Illinois regarding libel and held that published words reflecting on one's patriotism are libelous per se whether they be directed at a person or a corporation. Pullman Standard Car Mfg. Co. v. Local Union No. 2928, 7 Cir., 152 F.2d 493, 496.

 A reading of these cases forces us to the conclusion that in Illinois it is libelous per se to write of a man or a corporation that they are Communists or Communist sympathizers, because the label of "Communist" today in the minds of many average and respectable persons places the accused beyond the pale of respectability and makes him a symbol of public hatred, in violation of the statute. Ill.Rev.Stat.1945, c. 38 § 402. It has long been established that there need not be universal hatred as a result of a falsehood. It is sufficient if a fraction of those informed view the plaintiffs with contempt. Peck v. Tribune Co., 214 U.S. 185, 190, 29 S.Ct. 554, 53 L.Ed. 960, 16 Ann.Cas. 1075.

Defendants argue that the word Communist has no definite meaning; that it is merely the expression of an opinion which if held actionable per se is to eliminate its use from political discussions. Concededly, the word is carelessly and perhaps indefinitely used today. Nevertheless, there can be no denial that its appearance as a characterization in a newspaper political editorial is sufficient to destroy a person's presumably good reputation with the public. And it seems anomalous for defendants to make such a contention, because newspaper publishers, generally, as molders of public opinion, have created the ogre which defendants here seek to characterize as innoxious. Even if these views may soon be altered and are in truth only the mores of the times, they must be respected as criteria. If it were libelous per se in 1889 to write of a man as an anarchist (Cerveny case) and libelous per se in 1915 to write of a man as a socialist (Ogren case) it is libelous per se in 1945 to write of a man as a Communist.

 In attempting to answer the question whether the alleged libelous article presents a factual issue to be determined by the jury we are guided by the rule "that an alleged libelous publication must be interpreted in the sense in which readers would understand it * * *." Ball v. Evening American Pub. Co., 237 Ill. 592, 600, 86 N.E. 1097, 1100. It is elementary that the alleged offending editorial comment must be considered as a whole. Indeed, the headlines of an alleged offending article should be considered in determining whether the language is reasonably susceptible of a defamatory meaning. Cook v. East Shore Newspapers, 327 Ill.App. 559, 587, 64 N.E.2d 751. If, however, the alleged libelous words are not in themselves libelous, they cannot be made so by innuendo. LaGrange Press v. Citizen Pub. Co., 252 Ill.App. 482, 485.

It is immediately apparent that the headline in the article complained of is provocative, whether one just glances at the words to create sense or studies them carefully.

As Pegler Sees It.

Communists Go "Big Business" to Trick U. S.

The article itself is dual in that it describes first the activities of one Novick, a manufacturer, who purchases time on the radio in order to interpret the news. It further states that his press agent is "a prominent and aggressive Communist"; that his news "interpreter" is a convicted thief; that Novick himself is associated with Communists in a projected new corporation. The second portion of the article, which is by no means completely segregated from the first, deals with Spanel and his corporation and directs attention to points of similarity between the two men. Obviously, however, the article is less ingenuous in its treatment of Spanel than it is in its treatment of Novick. Novick and Spanel

are compared as natives of Russia, successful manufacturers of war products, and disseminators of political propaganda. One of Spanel's newspaper advertisements in praise of Henry Wallace is described as:

"well expressing the attitude of some demagogues of the extreme left who regard the American citizen as a soulless lump to be fed, quartered, ordered and disciplined even as a dog.

"A native of Russia and an admirer of the Soviet system might be pardoned in the error."

This appears to be the strongest language and the most susceptible in the entire article of a defamatory meaning, although comment is made later of Spanel's possible motives in returning some of his corporation's profits to the United States Treasury.

It does not directly say that plaintiffs are Communists or tools of Communists. Defendants argue, therefore, that only by innuendo can a libelous meaning be ascribed to the article. With this we cannot agree. In the law of libel, while it is true the innuendo may not be used to enlarge the words in an article beyond their natural meaning, it may and should be used to explain the meaning of the words used in the alleged libel. Payne v. Evening American Publishing Co., 267 Ill.App. 610. From a reading of the entire article including the headline, an ordinary reader could conclude and the innuendo is that there was little difference between Spanel and Novick; that one definitely consorted with Communists; that both expended much of their corporations' profits to disseminate political propaganda; and that Spanel as a native Russian regarded his fellow American citizens with the same attitude as the Communists themselves are alleged to regard them. We must evaluate the effect rather than the form of the language as a whole, for " 'Positive assertion of a charge is not necessary to constitute a writing libelous; they may be made in the form of insinuation, allusion, irony, or questions, and the matter will be as defamatory as if asserted in positive and direct terms.' " Maclaskey v. Mecartney, 324 Ill. App. 498, 511, 58 N.E.2d 630, 637. We con-

clude, therefore, that an ordinary reader could understand the article to mean that Spanel is a Communist or a Communist sympathizer.

It is not for us to say whether from our interpretation of the quoted passage and the balance of the article we believe the language characterizes Spanel as a Communist or a Communist sympathizer and whether it alleges his corporation is being used by Communists, because to do so would be to usurp the function of the jury. It is sufficient that we recognize that the article is capable of two meanings, one libelous and the other not. If the words are to be interpreted in the sense in which the newspaper readers would understand them, the meaning of the article must be submitted to a jury. "Where the words are ambiguous or equivocal in meaning, the question of the meaning to be ascribed to them is for the jury." Ogren v. Rockford Star Printing Co., supra, 288 Ill. 405, 413, 123 N.E. 587, 590.

Defendants contend that the article in question was the utterance of political license; that a newspaper has the privilege and duty to comment editorially with respect to political issues and other matters of public interest; that when persons such as Spanel enter the arena of political discussion they cannot be heard to whine under the fury of counter-attack; that the birth of this action was founded upon the state of Spanel's thin skin. City of Chicago v. Tribune Co., 307 Ill. 595, 139 N.E. 86, 28 A.L.R. 1368, is cited as the bulwark in support of freedom of speech. This case is clearly distinguishable because the case involved a municipal corporation and the court held that all publications against it, excepting those advocating violence, are absolutely privileged. The court concededly did not pass upon the meanings of the publications involved.

By their argument of privilege defendants are setting up an affirmative defense which is not before this court on a motion to dismiss. Harkness v. Chicago Daily News Co., 102 Ill.App. 162; Spanel v. Pegler, District Court of Conn., 926 F. Supp 70.

624

The judgment appealed from is reversed, and the cause is remanded to the District Court.

LINDLEY, District Judge (dissenting in part).

Whether it is libelous to accuse one of being a communist is to be decided according to the law of Illinois and, though the courts of that state have not directly passed upon the specific question, I have no quarrel with reasoning of the majority opinion. The word "communism" probably does not mean the same thing to everyone. I assume, however, that its ordinary connotation carries with it the idea of seeking to overthrow the Government of the United States by force and violence or trickery and to impose upon the people, by force or violence, if necessary to achieve the end, a form of totalitarian government. Therefore, I can persuade myself only that the majority rightfully concludes, in view of the pertinent Illinois decisions, that a charge of communism is beyond the pale of legitimate expression.

I feel constrained, however, to disagree as to the conclusion that the ordinary reader could reasonably draw from the article in question the inference that it was intended to charge plaintiff Spanel with being a communist and plaintiff International Latex Corporation with being under the control of communists. Everything said or hinted about either plaintiff is contained in the following language: "The International Latex Company of Playtex Park, Dover, Del., has been running political arguments as paid advertisements. * * * These have been New Deal preachments, and anti-Nazi, but, as far as my reading of them reveals, never anti-Communist nor hostile to totalitarianism, as such. . * * * There are points of similarity between Novick of Electronic and the president of International Latex, whose name is Abraham N. Spanel. Like Novick, Spanel was born in Russia and, like Novick, he is diligently engaged in war production and would appear to have prospered enormously. His advertisements run two or three columns wide, the length of the page, in a national list of newspapers, a campaign suggesting a huge appropriation for political propaganda, and he is a rapturous advocate of Henry Wallace as an American political prophet. * * * To this end he has published at advertising rates on a national scale several eulogies of Wallace, ostensibly as 'a public service,' including one by the ineffable Sen. Joe Guffey of Pennsylvania, * * * Another of Mr. Spanel's rhapsodies was a reprint of a column by a member of the Roosevelt newspaper following in Washington, which described Wallace as a champion and symbol of the 'aspirations of the common man and the underdog.' This was a poetic construction well expressing the attitude of some demagogues of the extreme left who regard the American citizen as a soulless lump to be fed, quartered, ordered and disciplined even as a dog. A native of Russia and an admirer of the Soviet system might be pardoned in the error. Collier's recently published a laudatory personal history of Mr. Spanel, praising him for his invention and manufacture of pneumatic boats for jungle warfare and a pneumatic stretcher for the recovery of casualties, and for his foresight in laying up, before Pearl Harbor, a reserve supply of liquid latex, or pure rubber. He formerly had manufactured girles for women and baby pants. Collier's tells us that, like Gailmor, Spanel studied for the clergy. He is said to have returned voluntarily $1,500,000 of his profits to the Treasury, but we are not told whether he might have had to do this anyway, as many manufacturers must, under the renegotiation process. A war contractor thus could make patriotic virtue of legal necessity. We do know, however, that the advertising matter is entirely political and ideological, with no mention of any commercial product, and that it represents a lavish outlay of money by a corporation for political propaganda in the guise of public service, financed by an immigrant from Russia, who seems to admire Russia as a trustworthy national comrade of the United States, without reference to the record of Russia's past performances or examination of the Communist system."

Whether these words are reasonably susceptible of the meaning attributed to them by plaintiff is, in Illinois, a question of law for the court. Payne v. Evening American

Pub. Co., 267 Ill.App. 610, cert. denied, 271 Ill.App. xxxii. And the motion to dismiss does not admit that the language of the article is susceptible of the interpretation attributed to it by plaintiffs; for the courts of that state have declared that it is well settled that a motion to dismiss will not be sustained if the words claimed to be libelous are not reasonably or fairly "capable of the construction" placed upon them by plaintiffs and that it is for the court to decide whether the publication is "reasonably capable" of the meaning ascribed to it. Kulesza v. Chicago Daily News, Inc., 311 Ill. App. 117, 35 N.E.2d 517, 521. So the specific question before the District Court and before this court upon review is whether the article quoted is reasonably susceptible of being interpreted by a reader as meaning that plaintiffs are charged with being communistic or communistic "fellow-travelers."

I search the words in vain to find any statement or implication that Spanel is a communist or that he seeks unlawfully to overthrow the Government of the United States or that the International Latex Corporation is managed by or is under the control of communists. The article does not state that either plaintiff is a member of the communist party, a criminal, or engaged in any movement to overthrow the Government or in any course of action which would subject either of them to scorn or ridicule. Indeed, it seems to me, the article is susceptible of only one interpretation, merely that it is announcement of ideologies opposed to those promulgated by the plaintiffs in their paid advertisements. The author of the article evidently considered the paid advertisement of political doctrines unsound. Consequently he commented that plaintiffs have been running political advertisements which are anti-Nazi in character but, so far as he had observed, not anti-Communistic. He did say that Spanel was born in Russia; that he had been engaged in war production; that it seemed that he had prospered enormously; that he was a rapturous advocate of Henry Wallace; that he had been educated for the clergy; that he had been praised for his invention and manufacture of pneumatic boats for jungle warfare and a pneumatic stretcher for the recovery of casualties, and for his foresight in laying up, before the war, a reserve supply of liquid latex or pure rubber; that he had voluntarily returned $1,500,000 in profits to the United States Treasury; that the author was unadvised as to whether he had done this because required to do so under the renegotiation process; that the advertising matter criticized had to do entirely with political matters; that it was financed by an immigrant from Russia "who seems to admire Russia as a trustworthy national comrade of the United States, without reference to the record of Russia's past performances or examination of the Communist system." I think it is impossible to read into these words a charge of communism, of belief in a revolutionary proposal to overthrow this government by force or violence and by such means to impose another political system upon the American people. I do not believe any reader would or could be justified in drawing such a conclusion. Indulging the worst possible implications, I think no reader could reasonably infer anything libeling either plaintiff. One who seeks to enlighten the public through thought provoking advertisements should not be offended by public comment of those who refuse to be enlightened. Plaintiffs have voluntarily chosen to comment on controversial issues. The court should not permit them, by libel actions, to stifle those who honestly oppose their views and question their purposes and motives. Our Government was built and stands firmly upon the principle of free and full discussion of all political issues.

I think plaintiffs failed to state a case. I would affirm the judgment.