(No. 37100.

DEERFIELD PARK DISTRICT, Appellee, *vs.* PROGRESS DEVELOPMENT CORPORATION *et al.,* Appellants.

*Opinion filed November 30, 1962.*

JOSEPH L. RAUH, JR., EUGENE GRESSMAN, and JOHN SILARD, all of Washington, D.C., and JOHN W. HUNT, RICHARD G. KAHN, HOWARD HOOSIN, and JOHN P. MORRIS, all of Chicago, for appellants.

NORMAN, ENGELHARDT, ZIMMERMAN, FRANKE & LAU-
RITZEN, of Chicago, and SNYDER, CLARKE, DALZIEL,
HOLMQUIST & JOHNSON, of Waukegan, (GERALD C. SNY-
DER and ALLYN J. FRANKE, of counsel,) for appellee.

Mr. JUSTICE HERSHEY delivered the opinion of the
court:

This is an appeal from a judgment of the circuit court
of Lake County in a condemnation proceeding ordering
that title to certain real estate vest in the petitioner, the
Deerfield Park District, in confirmation of a prior order and
denying the motion of Progress Development Corporation
to dismiss the condemnation suit. The appeal is taken di-
rectly to this court under section 12 of the Eminent Domain
Act. Ill. Rev. Stat. 1961, chap. 47, par. 12.

This is the second time this case has been before us on
appeal. On the prior appeal this court remanded the cause
to the trial court for the sole purpose of permitting Progress
a full hearing on the question of whether the taking was
necessary and for a public purpose. 22 Ill.2d 132.

The opinion in the prior appeal sets forth the facts in
detail, and only a brief statement of them need be made here.
In April 1959, and subsequent, Progress Development Cor-
poration, a private corporation, acquired for residential de-
velopment two unimproved parcels of real estate in the
village of Deerfield, Illinois. One tract of approximately
15 acres was known as Floral Park, and the other tract, of
approximately 7 acres, as Pear Tree. These subdivisions
were platted and Progress commenced installation of water,
sewer and street improvements and the construction of two
homes in Floral Park Subdivision. Thereafter, the plat of
Pear Tree Subdivision was approved. On December 7, 1959,
the Deerfield Park Board ordered the condemnation of these
two areas for park purposes. Appellants rejected an offer
of the Park Board to purchase these subdivisions for $166,-
199.91. A referendum was held December 21, 1959, on a

$550,000 bond issue to purchase these two tracts and four other park sites. The election carried. The following day, Progress and others sought a temporary restraining order in the United States District Court against the Park District, the village of Deerfield, their respective boards, and others, contending a conspiracy existed among those defendants to deprive plaintiffs in that action of their civil rights and seeking to enjoin the Park District from condemning the land and for other relief. The temporary restraining order was denied as to the Park Board.

Two days later this condemnation suit was filed. Progress filed a motion to dismiss the condemnation petition. The court granted the motion of the Park District to strike parts of the motion to dismiss and held a hearing on the grounds of the motion that there was no *bona fide* public need for acquisition of this property for public use and that petitioner did not negotiate or bargain in good faith. The proof offered by Progress was a 50-paragraph request for admission of facts which was objected to and which the court rejected.

This court remanded the cause on the prior appeal due to the restrictions on proof placed upon appellants in the trial court. We there held that "If by the trial court's ruling, it was intended to strike the allegation [that the Park District used its power of eminent domain for the sole and exclusive purpose of preventing the sale of homes by Progress to Negroes in violation of Progress's right to equal protection of the law] and deprive Progress of the right to prove by material facts that the exercise of eminent domain in the instant case was not necessary, and was not to be devoted to a public use, but was for the sole purpose of depriving Progress of the right to do business, then the ruling was in error." 22 Ill.2d 132 at 141.

On remand, the question was whether the taking was necessary and for a public purpose. As we stated in the prior opinion, it is conceded, as it must be, that every private

owner of property holds his title subject to the lawful exercise of the sovereign power of eminent domain, and the courts may not substitute their judgment for that of the condemning authorities in inquiring into the necessity and propriety of the exercise of the power.

On retrial the Park District introduced testimony of a professional park planner, of the park commissioners, and resolutions of the Park Board. This testimony clearly established that the taking is necessary for park purposes. The park planner testified he was employed to and did make a survey of the park district to determine suitable property for park purposes and that he made a report to the Park Board recommending acquiring these two sites before Progress had acquired any land. Floral Park was shown to be some 15 acres, fairly level, somewhat wooded, an excellent site to serve the population area, and is located across from the Wilmot School. Likewise, the Pear Tree Subdivision will serve a need for providing a park upon which a swimming pool can be located, as there is no swimming pool in the entire Park District, which includes the entire community of Deerfield. It was shown these were the only available sites where vacant land could be obtained for park purposes in the western one-third of the Park District.

Four park commissioners testified in detail as to the proper location of the properties, the need for park development to provide better physical play area, football, baseball, apparatus, and for the general normal functions of the Park District, as well as to provide a swimming pool.

No attempt was made by Progress to contradict, vary or minimize the testimony on behalf of the Park District showing the taking was necessary and for a public purpose. In this state of the record, the Park District has sufficiently shown the need and necessity for the land in question for public parks. These are the matters for which the previous remand was made and the facts have been sufficiently proved. As we stated in our prior opinion (p. 140): "the

motives that may have actuated those in authority are not the subject of judicial investigation."

Nevertheless, we must say in passing that Progress has had a full hearing, and as trial judge said, "with the evidence door thus opened to its widest point," there is no evidence that any member of the Park Board formed or engaged in any conspiracy to deprive Progress of any of its legal rights. No violation of the fourteenth amendment to the constitution of the United States is here involved.

As was said by this court in the prior opinion (p. 140) : "If parks are needed in Deerfield, and if the land so selected for them is appropriate for that purpose, the power of eminent domain cannot be made to depend upon the peculiar social, racial, religious or political predilections of either the condemning authority or the affected property owner. Progress is entitled to the same opportunity to hold land and operate a business as anyone else. They, like all others, hold their land subject to the lawful exercise of the power of eminent domain."

The evidence clearly shows parks are needed in Deerfield and that the land condemned is appropriate for that purpose. Progress has had a full hearing and opportunity to refute this proof and did not. The decision of the trial judge was correct.

*Judgment affirmed.*