**PROGRESS DEVELOPMENT CORPORATION, a corporation, and Modern Community Developers, Inc., a corporation, Plaintiffs,**

**v.**

**James C. MITCHELL et al., Defendants.**

**No. 59 C 2050.**

United States District Court
N. D. Illinois, E. D.

June 28, 1963.

On Counter-Defendants' Motion to Dismiss Counter-Plaintiff's Counterclaim July 11, 1963.

John W. Hunt, Richard G. Kahn and Howard Hoosin, Chicago, Ill., for plaintiffs.

Gerald C. Snyder and Lewis D. Clarke, Snyder, Clarke, Dalziel, Holmquist & Johnson, Waukegan, Ill., Allyn J. Franke, c/o Norman, Engelhardt & Zimmerman, Chicago, Ill., for defendants Deerfield Park District, James C. Mitchell, Dudley L. Dewey, Edward J. Walchli, Donald W. Keller and Aksel Petersen.

Thomas A. Matthews and Byron S. Matthews, John B. Moser, Moser & Compere, Chicago, Ill., for defendants Village of Deerfield, Winston Porter, Harold L. Peterson, John Aberson, Maurice Petesch, Arno Wehle and Joseph Koss.

Edward J. Kelly, Chicago, Ill., for defendant Joseph Powell.

George B. Christensen and Charles J. Calderini, Jr., Winston, Strawn, Smith & Patterson, Chicago, Ill., for defendants Harold C. Lewis, Herbert H. Garbrecht, Hal A. Petit, Robert D. Rierson, Robert G. Mullen, Leonard Bronstein, David J. Maundrell and Frank M. Blake.

ROBSON, District Judge.

The core of the controversy presented by the several motions of defendants to dismiss or for judgment upon the recently filed affirmative defenses is whether the finding by Judge Bernard M. Decker in his October 18, 1961 opinion in Cause No. 71780, Deerfield Park District, et al.

v. Progress Development Corporation, in the Circuit Court of Lake County, Illinois, that "The evidence wholly fails to establish the charge of conspiracy against the members of the Park Board" obviates the need for this Court's "trial on the merits of Count III" as directed by the Court of Appeals' mandate of February 7, 1961. Judge Decker's opinion has been affirmed by the Illinois Supreme Court, 26 Ill.2d 296, 186 N.E.2d 360, and certiorari denied by the United States Supreme Court, 372 U.S. 968, 83 S.Ct. 1093, 10 L.Ed.2d 131, and rehearing denied June 11, 1963, 374 U.S. 818, 83 S.Ct. 1692, 10 L.Ed.2d 1042. Count III is the conspiracy count of the complaint.

The four pending separate motions by defendants to dismiss the complaint or for judgment on the pleadings are filed by the Park District and its individual members, the resident defendants, the Village of Deerfield and the individuals constituting its board of trustees, and Joseph Powell, a member of the "citizens committee." These motions were filed in the month of May, 1963, and are predicated on the United States Supreme Court's denial of certiorari from the Illinois Supreme Court holding which was adverse to Progress.

Supplemental answers have been filed by the resident defendants, the trustees of the Village of Deerfield, and Joseph Powell, setting forth "affirmative defenses" that the state court ruling constitutes a *res judicata* holding that there was no conspiracy as charged in the complaint.

■ There can be no question of the strict adherence required by a District Court of the mandate of a Court of Appeals. (Paull v. Archer-Daniels-Midland Company, 313 F.2d 612, 617 (C.A.8, 1963)). While requiring "strict compliance," the Court went on to say that "the trial court is free to pass upon any issue which was not expressly or impliedly disposed of on appeal." The United States Supreme Court has said that an inferior court "has no power or authority to deviate from a mandate issued by an appellate court." (Briggs v. Pennsyl-

vania Railroad Co., 334 U.S. 304, 68 S. Ct. 1039, 92 L.Ed. 1403) Chief Judge John S. Hastings stated in Lee v. Terminal Transport Co., Inc., 7 Cir., 301 F.2d 234, that a district court is "without authority to modify the mandate" of the Court of Appeals. Judge Latham Castle stated similarly in Bankers Life and Casualty Company v. Bellanca Corporation, 7 Cir., 308 F.2d 757, at p. 759. Further holdings accord. Thus, where a cause has been remanded for procedure in compliance with a mandate, the District Court may not undertake to revise its original opinion in a material respect. (Stiller v. Squeez-A-Purse Corporation, 296 F.2d 504 (C.A.6, 1961)) Judge F. Ryan Duffy in Independent Nail & Packing Co., Inc. v. Perry, 7 Cir., 214 F.2d 670 (1954), stated that the District Judge had exceeded his powers in withholding from the petitioner the relief to which the Court of Appeals had decided it was entitled. To similar effect is Judge Walter C. Lindley's holding in Criscuolo v. United States, 7 Cir., 250 F.2d 388 (1957), where he held the District Court had deviated from the mandate. The limited and strict duty of the District Court is emphasized in the Sixth Circuit opinion in Scientific Anglers, Inc. v. B. F. Gladding & Co., Inc., 260 F.2d 662 (1958), and the Fourth Circuit opinion in Tribble v. Bruin, 279 F.2d 424 (1960).

Nevertheless,

" * * * [B]lind obedience to the letter of the mandate is not exacted where injustice will result therefrom, as where that would allow execution to go against parties who have compromised their liability * * *. Illustrating this rule of reasonably substantial compliance, some cases may be cited where dismissals, executions, injunctions and receivership proceedings were sustained although not in exact accord or wholly within the directions sent down." (Cyclopedia of Federal Procedure, § 69.34.)

That strict compliance with the dictates of a mandate may be relaxed to en-

compass intervening circumstances is indicated by Judge Elmer J. Schnackenberg's statement in A. C. Becken Co. v. Gemex Corporation, 7 Cir., 314 F.2d 839 (1963), at p. 840:

"The record before us shows that the district court on remandment proceeded along the lines suggested. It heard *additional evidence which was devoted to actual occurrences during the time which elapsed while the case was being litigated upon appeal.* The court * * * had the superior advantage of evidence of conditions which had in fact occurred while the case had been on appeal. We concur in the conclusion of the district court that, under these circumstances, evidence of actual occurrences and experiences between the first and last hearings may be considered in connection with the estimates of future damage introduced at the first hearing. * * * [*T*]*he entire evidence must be considered together.*" (Emphasis supplied.)

In order to determine whether this Court's inescapable duty to comply with the Court of Appeals' mandate requires it to conduct anew a trial of the conspiracy issue raised by Count III despite the state court's intervening holding of the nonexistence of a conspiracy, this Court has studied carefully the very exhaustive opinion of Judge Decker, and the affirming opinion of the Illinois Supreme Court. This Court concludes there can be no question that Judge Decker granted the fullest opportunity to Progress to present all the evidence it could adduce *against anyone* charged with the alleged conspiracy. And upon that evidence there can be no question that Judge Decker found no conspiracy actually existed. Thus he states:

"The only remaining issue is whether Progress has shown by clear and convincing evidence the existence of a conspiracy to prevent it from doing business in which the participants are guilty of 'purposeful discrimination' against it. * *

"When this evidence is analyzed it reveals nothing more than that a large number of Deerfield citizens were opposed to the type of integrated subdivision proposed by Progress. * * *

* * * * * *

"Stripped to its essentials the contention of Progress is that the residents of Deerfield had no legal right to make a choice between the use of Progress' land for park purposes for the benefit of the general public of Deerfield in preference to its use by the defendant for a private residential development. * * *

* * * * * *

"Unless suspicion and conjecture are to be substituted for evidence *there is no proof in this record of any express or implied agreement on the part of the members of the Park Board with any other persons to institute this condemnation for the sole purpose of forcing Progress out of business.* * * *

* * * * * *

"The acquisition by the Park Board of additional land for public use by the citizens of Deerfield was a lawful purpose. The means adopted to accomplish this object—the referendum and the condemnation—were lawful means. A common undertaking to accomplish a lawful object in a lawful manner is not a conspiracy irrespective of the motives of those engaged therein. * * *

* * * * * *

" * * * *The evidence wholly fails to establish the charge of conspiracy against the members of the Park Board.*" (Emphasis supplied.)

In its conclusion of law the Court stated:

"There is no evidence that any member of the Park Board formed or engaged in any conspiracy to deprive Progress of any of its legal rights."

The judgment by Judge Decker, after remand, also recites that the defendants were entitled to *a full and complete hearing* as to all matters alleged in said Motion to Dismiss. He found that:

"There is no evidence that any member of the Park Board formed or engaged in any conspiracy to deprive Progress or anyone else of any legal right. * * * [T]he Court specifically finds that the Petitioner did not, nor did any member of the Park Board of the Deerfield Park District conspire with any one or discriminate against the Plaintiffs in Case No. 59 C 2050 [the *instant complaint*] * * * as charged. * * *"

The judgment order of Judge Decker states that some of the bases for Progress' motion to dismiss in the Circuit Court suit were:

(1) The filing and pendency of the instant suit, attaching a copy of the complaint and *making it a part of motion to dismiss.*

(2) The filing of the condemnation suit was an additional overt act in the "alleged concerted plan and conspiracy to deprive these Defendants of their *civil rights*, including the right to build residential homes on the property involved and to sell some of such homes to Negroes, and stated *such alleged concerted plan and conspiracy is a violation of the Constitution and laws of the United States, as more fully appeared from the allegations set forth in the Complaint filed in the Federal Court.*"

(3) That the Park District "*individually and in combination and conspiracy with the other Defendants named in the Complaint filed in the Federal Court, all as alleged in such Federal Court Complaint, are abusing the power of Eminent Domain.* * * *"  (Emphasis supplied.)

The opinion of the Illinois Supreme Court affirming Judge Decker found (26 Ill.2d 296, 299, 186 N.E.2d 360, 361) that:

"No attempt was made by Progress to contradict, vary or minimize the testimony on behalf of the Park District showing the taking was necessary and for a public purpose."

Further, 26 Ill.2d at p. 300, 186 N.E.2d at p. 361 it stated:

"* * * [W]e *must say in passing that Progress has had a full hearing, and as trial judge said, 'with the evidence door thus opened to its widest point,' there is no evidence that any member of the Park Board formed or engaged in any conspiracy to deprive Progress of any of its legal rights.* * * *

\* \* \* \* \* \*

"The evidence clearly shows parks are needed in Deerfield and that the land condemned is appropriate for that purpose. Progress has had a full hearing and opportunity to refute this proof and did not. The decision of the trial judge was correct."  (Emphasis supplied.)

It is the Court's conclusion that these state court proceedings foreclose the necessity for this Court's re-trial of the same issue of the existence of a conspiracy by the same entities and individuals against Progress.

It has been held that where there has been an adjudication in a state court with affirmance in the state supreme court of a civil rights cause charging a conspiracy to deprive the plaintiff of property in violation of the Federal constitution that the same right may not be reasserted in the Federal court where it is clear that there has been no denial of due process of law or the equal protection of the law.  (Bottone v. Lindsley, et al., 10 Cir., 170 F.2d 705 (1948)).

Judge Duffy in Smith v. Village of Lansing, 7 Cir., 241 F.2d 856 (1957), stated in a suit seeking an injunction against a village and others charged

with conspiracy to require plaintiff to demolish a building, that:

" * * * [M]any litigants who are unsuccessful believe that they have been deprived of some constitutional rights, but the Fourteenth Amendment of the United States Constitution and the Civil Rights Act do not 'assure uniformity of decisions or immunity from merely erroneous action * * *.' * * * If the plaintiff is entitled to maintain this suit in the Federal Courts, the doors will be open for every unsuccessful litigant in State Court proceedings to demand that the Federal Courts be arbiters of the correctness of State Court decisions and judgments."

Judge Win G. Knoch stated in Johnson v. Stone, 7 Cir., 268 F.2d 803, quoting the Bottone case, supra, that:

" ' * * * [T]o make out a cause of action under the Civil Rights Statutes, the state court proceedings must have been a complete nullity, with a purpose to deprive a person of his property without due process of law. * * * ' "

The United States Supreme Court's handling of litigation concurrently pending in state and Federal court is enlightening. The case of National Association for the Advancement of Colored People v. Gallion, et al., 368 U.S. 16, 82 S.Ct. 4, 7 L.Ed.2d 85, involved an action against state officials for deprivation of rights, privileges or immunities granted by the Constitution or Federal laws. The plaintiff in the District Court (190 F.Supp. 583) had moved for a preliminary injunction and the defendants for a dismissal of the action. The District Court held that it would not exercise jurisdiction to entertain the suit where its basis was the alleged unconstitutional action by the state court in not proceeding promptly and the Supreme Court had refused to pass on the constitutional issues and had remanded the matter to the state court for prompt disposition. The Court of Appeals concluded the District Court acted correctly but

should not have dismissed the suit; instead it should have retained jurisdiction so that if a prompt state court determination were not forthcoming the Federal Court could act (5 Cir., 290 F.2d 337). The United States Supreme Court in the Gallion case, supra, granted certiorari and remanded the case to the Court of Appeals with instructions "to direct the District Court to proceed with the trial of the issues * * * *unless within a reasonable time, no later than January 2, 1962, the State of Alabama shall have accorded to petitioner an opportunity to be heard*" on the merits of the cause of action, and "pending the final determination of all proceedings in the state action, the District Court is authorized to retain jurisdiction over the federal action and to take such steps as may appear necessary and appropriate to assure a prompt disposition of all issues involved in, or connected with, the state action."

■■ It is thus evident that where there is a trial of the issue in the state court, there is no need for re-trial of that same issue in the Federal Court. Also in point is the case of Atchison, T. & S. F. Ry. Co. v. A. B. C. Fireproof Warehouse Co., 8 Cir., 82 F.2d 505 (1936).

The doctrine of *res judicata* has been held applicable in civil rights cases under the Federal statute. (Spampinato v. City of New York, 311 F.2d 439 (C.A.2, 1962)). The Court is of the opinion that as to those parties as to whom the doctrine of *res judicata* is not applicable because of lack of identity of parties the Court is justified in applying the doctrine of collateral estoppel. Thus Judge Julius J. Hoffman said in United States v. Swift & Company, D.C., 189 F.Supp. 885, at 903, affirmed 367 U.S. 909, 81 S.Ct. 1918, 6 L.Ed.2d 1249, that:

"Collateral estoppel supplements *res judicata* and applies to prevent the re-litigation of issues of fact or law previously decided between the parties. * * * The doctrine comes into play when the absolute bar of *res judicata* does not obtain. Unlike

*res judicata,* collateral estoppel extends not to all claims, defenses and issues that might have been raised by the parties, but only to those issues actually contested and decided."

In United States v. Kramer, 289 F.2d 909 (C.A.2, 1961), it was said, at p. 916:

"The very nub of collateral estoppel is to extend *res judicata* beyond those cases where the prior judgment is a complete bar."

It could also be maintained that analogous to the class suit doctrine, Progress' right to recover against those defendants here named but who were not named in the state court suit has been adjudicated adversely to it, there being but one alleged overall conspiracy in question. The United States Supreme Court has held that "the judgment in a class action will bind only those members of the class whose interests have been adequately represented by existing parties to the litigation." (Sam Fox Publishing Co., Inc., et al. v. United States, et al., 366 U.S. 683, 691, 81 S.Ct. 1309, 1313, 6 L.Ed. 2d 604 (1961)). American Jurisprudence, Vol. 30A, Judgments § 405, states the rule:

"Under the so-called doctrine of class or virtual representation, one or more persons may be permitted to maintain or defend an action for themselves and various other persons similarly situated and interested, and an exception to the general rule that no person is bound by a judgment except those who are parties or stand in privity with others who are parties exists in the case of persons who are so represented by persons on the record as parties."

It is thus evident that if the defendants *here* named, but not named in the state court, were adequately represented by the existing parties to the state court litigation they too are bound by the state court judgment. It is apparent that the Park District and its members were deemed among the chief violators of Progress' civil rights, so that a full trial in the state court of *their* liability as con-spirators, with their complete vindication would indisputably absolve the others here asserted to have been co-conspirators.

Furthermore, decisions have held that where those alleged to the more culpable or prime actors have been found guiltless, those alleged participants *less involved* may avail themselves of the benefit of the judgment in favor of those more seriously involved. (Portland Gold Mining Co. v. Stratton's Independence, 10 Cir., 158 F. 63, 16 L.R.A.,N.S., 677; Willoughby v. Flem, D.C., 158 F.Supp. 258; Bigelow v. Old Dominion Copper Co., 225 U.S. 111, 32 S.Ct. 641, 56 L.Ed. 1009.)

There is no assertion that the state trial of the conspiracy issue was in *any* respect inadequate or incomplete. It would therefore be an act of supererogation for this Court to proceed with still another trial of the same issue, the existance of a conspiracy violative of plaintiff's Federal civil rights.

The Court therefore concludes that Progress has been permitted in the state court to exercise fully the "legal right to see if they can prove such a conspiracy as the foundation for legal damages in a trial by jury" which the Court of Appeals directed that this Court give to Progress, i. e., a trial on the merits of Count III.

Defendants are directed to submit a final order in conformance with this decision within ten days.

### ON COUNTER-DEFENDANTS' MOTION TO DISMISS COUNTER-PLAINTIFF'S COUNTER-CLAIM

On March 31, 1961, Deerfield Park District filed a counterclaim against Progress Development Corporation and Modern Community Developers, Inc., seeking $33,000 damages allegedly growing out of the increased interest rate on two installments of bonds which the Park District sold: $300,000 on February 15, 1960, with interest rate bid of 4.2484%, and $250,000 on June 15, 1960,

with interest rate of 4.1234%. It is asserted that the normal interest rate would have been 3.50% had counter-defendants not maliciously libeled the Park District, resulting in but three bidders at each sale instead of the normal ten prospective bidders.

The motion to dismiss is predicated on the legal propositions that (1) Illinois law controls (Spanel v. Pegler, 160 F.2d 619, 171 A.L.R. 699 (C.A.7, 1947); La Salle National Bank v. 222 E. Chestnut Street Corp., 267 F.2d 247 (C.A.7, 1959)), and (2) under Illinois law a municipal corporation may not be sued, except in certain instances not here relevant (City of Chicago v. Tribune Co., 307 Ill. 595, 139 N.E. 86, 28 A.L.R. 1368 (1923)). The Park District rejoins that assertion with the ingenious argument that the Park District is injured in its status as a *competitor* with the counter-defendants and therefore the usual rule of nonliability for libel of a municipality does not control.

A reading of the decisions cited, especially that of the Illinois Supreme Court in the case of City of Chicago v. Tribune Co., supra, 307 Ill. at pages 608–610, 139 N.E. at pages 90–91, discloses that the courts are aware of the fact, even in libel suits, that a municipal corporation functions in proprietary capacities. Thus, 307 Ill. at p. 608, 139 N.E. at p. 90, it is said:

"A city is no less a government because it owns and operates its own water system its own gas and electric system and its own transportation system."

At pp. 609–610 of 307 Ill., p. 91 of 139 N. E. it is said:

"While for certain limited purposes it is often said that a municipality owns and operates its public utilities in its capacity as a private corporation and not in the exercise of its powers of local sovereignty, yet because of its proprietary rights it does not lose its governmental character. * * * It is manifest that, the more so-called private property the people permit their governments to own and operate, the more important is the right to freely criticize the administration of the government. As the amount of property owned by the city and the amount of public business to be transacted by the city increase, so does the opportunity for inefficient and corrupt government increase, and the greater will be the efforts of the administration to remain in control of such a political prize. The richer the city the greater the incentive to stifle opposition. In so far as the question before us is concerned, no distinction can be made with respect to the proprietary and governmental capacities of a city.

"By its demurrer *appellee admits it published malicious and false statements regarding the city of Chicago with intent to destroy its credit and financial standing, and assuming that there was a temporary damage to the city and a resultant increase in taxes*, it is better that an occasional individual or newspaper that is so perverted in judgment and so misguided in his or its civic duty should go free than that all of the citizens should be put in jeopardy of imprisonment or economic subjugation if they venture to criticise an inefficient or corrupt government." (Emphasis supplied.)

While the instant situation as viewed by the Park District is not entirely parallel to that of the Tribune case, supra, it is sufficiently close to reveal a firm policy permitting the widest latitude in criticism of a governmental entity.

The motion to dismiss the Counterclaim is allowed and it is ordered that said Counterclaim be and it is hereby dismissed.